383 A.2d 195

COMMONWEALTH of Pennsylvania

v.

James W. JENKINS, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 21, 1977.

Decided Jan. 26, 1978.

468

Barry W. Kerchner, Pottstown, for appellant.

William T. Nicholas, Dist. Atty., Ross Weiss, 1st Asst. Dist. Atty., Eric J. Cox, Asst. Dist. Atty., Chief, Appellate Div., Bert M. Goodman, James A. Cunningham, Asst. Dist. Attys., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

Appellant, James William Jenkins, was tried before a judge and jury and found guilty of murder in the third degree. Post-verdict motions were denied, and appellant was sentenced to imprisonment of not less than eight nor more than twenty years. This appeal followed.

Appellant contends that the trial court committed reversible error in permitting the prosecution, over objection, to use a written report prepared by a police officer to impeach appellant's credibility when the prosecution had previously denied the existence of such a report.

Appellant, an inmate at Graterford Prison, was charged with the fatal stabbing of another inmate on May 7, 1974. Prior to trial, defense counsel filed a bill of particulars, requesting "a copy of any statements or confessions made by [appellant], either orally or in a written form, or reduced to writing in a report by an agent of the Commonwealth and attributed to [appellant], made at any time since the inception of this matter." At a pretrial conference and again at trial, the trial judge ordered all such statements turned over to appellant. It is undisputed that appellant gave an oral statement to investigating officers, and that the investigating officer took notes on appellant's statement which were

included in a written report. It is also undisputed that the prosecution had possession of this report at all relevant times. Despite the presence of this report in the prosecution's files, the assistant district attorney handling the case consistently denied its existence, repeatedly assuring the court and defense counsel that no such statements existed.

During the trial, after the appellant had testified in his own behalf that he did not know the victim and had never spoken to him, the prosecution was permitted, over the objection of defense counsel, to use a police officer's report of an oral statement given by the appellant. In substance the report stated that appellant had told the officer that appellant, in his capacity as manager of the prison kitchen had spoken to the victim the morning of the stabbing incident. The appellant's oral statement, reduced to writing by the police officer in his report, was contrary to appellant's trial testimony.

In its opinion denying post-verdict motions, the trial court concluded that the prosecution should not have been permitted to use the report at trial because the prosecution had violated the trial court's order. The trial court characterized the prosecution's conduct as "inexcusable."

Notwithstanding this error, the court refused to grant a new trial concluding that the error was not reversible error because "[d]espite the prosecutor's misconduct in this case, this Court is not persuaded the claimed prejudice to the defendant has been demonstrated." According to the trial court, since the misconduct went "solely to the issue of defendant's credibility," the prejudicial impact of the prosecution's "deliberate or grossly negligent failure . . . to produce the report" was minimal and did not require a new trial. We do not agree.

The trial court erred in not recognizing the critical importance of a defendant's credibility. There can be no doubt that a jury's appraisal of a person's credibility can weigh heavily in its final verdict. The Supreme Court has long rejected the notion that credibility is unrelated to a fact-finder's final decision to acquit or convict.

"The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence . . . ." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221 (1959).

*See also United States v. Hibler*, 463 F.2d 455, 460 (9th Cir. 1972) (undisclosed evidence which goes only to credibility may be material on the issue of guilt or innocence). Once the jury was led to believe that appellant did not tell the truth concerning his encounter with the deceased the morning of the killing, it became easier for them to conclude that appellant's account of the knifing incident was also falsified. In short, we think it clear that the prosecution's improper impeachment of appellant was highly prejudicial.

■ The prosecution argues that it was properly permitted to use the report at trial because the court's order requiring the prosecution to turn over to the defense the officer's report was improperly entered. We do not agree.

The prosecution contends that since the report consisted of an officer's notes of appellant's *oral* statement, it does not fall within that part of Pa.Rule of Crim.P. 310 which allows a trial court to order discovery of a defendant's "written confessions and written statements."

Although Rule 310 has recently been amended, the effective date of the amendments is January 1, 1978. We therefore consider this case under Rule 310 as written at the time of the trial in this case:

"All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons. The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as

are necessary and proper. In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth."

The prosecution may be correct that the police officer's written report of appellant's oral statement does not come under that portion of Rule 310 which refers to "written confessions and written statements." We have, however, construed Rule 310 to permit discovery of precisely the kind of evidence sought here if compelling circumstances are shown. *Commonwealth v. Crawford*, 461 Pa. 260, 264–65, 336 A.2d 275, 277–78 (1975); *Commonwealth v. Turra*, 442 Pa. 192, 196, 275 A.2d 96, 98 (1971). In *Crawford*, the defendant, like appellant in this case, sought pretrial discovery of oral statements he made to the police which the police officers had recorded in the form of written notes. Citing *Turra*, we held the defendant could not obtain the reports but only because he had not demonstrated "exceptional circumstances and compelling reasons" as required by Rule 310. The necessary corollary of that rule is that when those criteria are met, a trial court may, consonant with Rule 310, order such notes turned over to the defendant.

The prosecution also argues that the trial court's order was improper because the appellant did not establish "exceptional circumstances and compelling reasons" as required by Rule 310. In its opinion the trial court said:

"*In this instance the trial court determined that such exceptional circumstances were present, and ordered that any and all such reports be made available to the defendant. The propriety of that determination has never been challenged.* Despite the clear mandate of that order, the assistant district attorney failed to comply with its terms. Rather, he steadfastly maintained that no such report existed, even after testimony elicited during trial suggested that such a report had in fact been made. Only after the defendant had placed his credibility in issue by taking the stand in his own behalf, did the existence of the report suddenly, almost miraculously appear. It was subse-

quently determined that the report had been a part of the Commonwealth's files from the outset of the investigation and had at one point been read by the assistant district attorney."

As the trial court pointed out, the prosecution at no time raised a challenge in the trial court that appellant had not shown "exceptional circumstances and compelling reasons." Had this issue been raised in the trial court, the appellant would have had an opportunity to establish in detail the necessary circumstances. Moreover, a trial court would have wasted time conducting an adversary hearing as to whether the necessary circumstances existed for the discovery of a report whose existence the prosecution denied. Even if this record does not contain sufficient evidence to support the trial judge's conclusion that necessary circumstances were present, the fault is not that of the appellant or the trial judge but of the prosecution which denied the existence of any such report.

The prosecution further argues that if we determine that this nondisclosure was error, such error was harmless beyond a reasonable doubt. *Commonwealth v. Jackson*, 475 Pa. 604, 381 A.2d 438 (1977); *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); *Commonwealth v. Henderson*, 456 Pa. 234, 317 A.2d 288 (1974); *Commonwealth v. Davis*, 455 Pa. 466, 317 A.2d 218 (1974) (per curiam). In view of our recognition of the importance of a criminal defendant's credibility, and the fact that the prosecution's use of these reports undeniably damaged appellant's credibility, we cannot agree. *See Commonwealth v. Settles*, 442 Pa. 159, 162, 275 A.2d 61, 63 (1969) (error not harmless unless it "could [not] possibly have affected the jury in reaching its verdict").

Lastly, the prosecution argues that the assistant district attorney's withholding of this statement was not intentional. Even if we ignore the trial court's conclusion that the non-disclosure was "deliberate" or "grossly negli-

gent" and assume it was unintentional, appellant is entitled to a new trial because the nondisclosure affected the fairness of the trial. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 109 (1972). It is the effect on the right to a fair trial, not the prosecutor's state of mind, that results in the reversible error. *Cf. United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 353 (1976). In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a case involving prosecutorial withholding of exculpatory evidence, the Supreme Court expressly rejected the good faith or bad faith of the prosecution as the controlling consideration. *Brady* rested "not [on] punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." 373 U.S. at 87, 83 S.Ct. at 1197, 10 L.Ed.2d at 218. We think the same holds true in a case such as the instant one. In both instances, rudimentary demands of justice dictate that the defendant's conviction be reversed and a new trial granted. *Commonwealth v. Heacock*, 467 Pa. 214, 355 A.2d 828 (1976), involved a situation similar to the one before us. In *Heacock,* the prosecution asserted, at a suppression hearing, that it would not introduce, for any purpose, a particular gun found in defendant's apartment. Hence, no determination was made at the suppression hearing whether the gun should be suppressed. At trial, the prosecution questioned defendant concerning possession of the gun. We held that initiating such questioning for the purposes of impeachment was reversible error. *Id.* at 218, 355 A.2d at 830. We so hold in this case also.

Because we deem the withholding of appellant's statement to be reversible error we need not address appellant's final argument that repeated instances of prosecutorial misconduct during the trial deprived appellant of a fair trial.

Appellant also contends that the trial court erred in denying his motion that the indictment be quashed because the grand jury proceeding was based on hearsay evidence. We have examined this issue and find it to be without merit.

*See Commonwealth v. Dessus*, 423 Pa. 117, 224 A.2d 188 (1966).

Judgment of sentence reversed and the case remanded for a new trial.

JONES, former C. J., and NIX, J., did not participate in the consideration or decision of this case.