456 A.2d 988

**COMMONWEALTH of Pennsylvania**

v.

**Winfield JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 22, 1982.

Filed Jan. 7, 1983.

Reargument Denied March 21, 1983.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and BECK, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for robbery. Appellant argues that the lower court erred in denying his motion to quash the return of the transcript of the preliminary hearing; in refusing to suppress his statement; and in giving the "restrain" version of the reasonable doubt charge.

We admire the careful way in which the lower court conducted the trial, and we agree with, and find no need to add to, its discussion rejecting appellant's arguments regarding the motion to quash and the reasonable doubt charge. But on two issues, which concern appellant's statement, we don't agree with the lower court. These issues have nothing to do with appellant's guilt—there's no doubt he was the robber—but a good deal to do with the conduct of other trials, in other cases.

The police officer who obtained appellant's statement did not give appellant the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In refusing to suppress the statement, the lower court held that whether a police officer must give a suspect *Miranda* warnings should be decided by a subjective, not an objective, test: *Did* the officer think he was asking a question that might elicit an incriminating answer, not, *Should* he have thought so? We believe that the objective test is the right test. Applying it here, we conclude that the warnings should have been given, and since they were not, that the statement should have been suppressed. The lower court also held that it was not required to order a new trial as a sanction for the Commonwealth's failure to disclose appellant's statement in violation of Pa.R.Crim.P. 305 B(1). We believe that a new trial should have been ordered.

Appellant robbed a bar. He ran away but was soon caught by the police and brought back to the bar, where the bar maid, the disc jockey, and two patrons positively identified him. At the suggestion of one of the persons who had

chased appellant, the police went to a nearby porch. There they found a coat and scarf. Appellant had discarded these when he was chased—as an attempt, no doubt, to make himself look different. In a pocket of the coat the police found sunglasses, gloves, and a paper bag with money inside it, in an amount closely corresponding to the amount taken from the bar's cash register. Also in the pocket the police found a set of keys. After appellant had been arrested, and while he was in a holding cell at the police station, the officer who had found the keys showed them to appellant, and asked "if they belonged to him and he said they did and I [the officer] returned them to him." N.T. 119.

Before the trial, appellant's counsel had asked the assistant district attorney whether he intended to introduce any statement by appellant. The assistant district attorney replied that there was no statement. N.T. 133–34. After the officer had testified to appellant's statement about the keys, his counsel moved for a mistrial. N.T. 145, 219. The assistant district attorney argued that the statement was not a statement. N.T. 134. The lower court held that it was but denied the motion for mistrial. After some further testimony, the court interrupted the trial, saying, "I'll salvage this case if I can." N.T. 219. The court then conducted a hearing to decide whether the statement should be suppressed, N.T. 220 *et seq.*, after which it ruled that the statement was admissible, and could be referred to by the assistant district attorney in his closing argument, N.T. 234–35.

1

At trial the Commonwealth argued that appellant's statement that the keys were his was really not a statement. In rejecting the argument, the lower court said to the assistant district attorney:

Well, in answer to your contention, suppose you had asked him about the coat, does this coat belong to you, don't you think his answer would have been a highly

important statement?  Suppose you asked him about the sunglasses.

N.T. 135.

The assistant district attorney replied that he agreed that appellant's answer that the coat and sunglasses belonged to him would have been a statement, "since they were ... submitted as evidence against [appellant]," N.T. 135–36 (the coat and sunglasses were Exhibit C–1), but went on to say, "I think the keys themselves have no significance as evidence other than the fact that they were in the pocket of the coat," N.T. 136.  In its brief to us the Commonwealth argues in somewhat different terms, blending an argument about the nature of what appellant said with an argument about whether he was entitled to *Miranda* warnings.  Brief for Commonwealth at 9–12.

▇ Without question, appellant's admission that the keys were his was a statement.  The fact that the keys were not themselves offered in evidence was immaterail.  Furthermore, as the lower court's comment indicated, it was "a highly important statement."  The nature of appellant's statement as a statement and its importance were both emphasized by the assistant district attorney in his closing argument.  He conceded that the bar was "dimly lit," N.T. 252–53, but insisted that there were "physical facts" that showed that the witnesses' identification of appellant as the robber was not mistaken.  "There's the coat they described him wearing, a long coat.  There's the sunglasses."  N.T. 259.  And, he said:

We know that's his coat not only because it came off the porch but because of a—sometimes you let things escape. *It's very important.*  What did Officer Oakley say.  The keys.  The keys were in the pocket of the coat.

When he went to the police station the defendant was at the police station and he said to the defendant, are these your keys.  Yes, they are my keys.  Do you want them back.  And he took them back and *the defendant himself even admitted that he had the keys* to his mother's home and he is now in possession of those keys.

*So absolutely one hundred per cent that ties the defendant to the coat.* You can't separate that defendant from that coat with a hundred crowbars. That's his coat and *you can't separate the coat from the money,* the proceeds of the crime, with a thousand crowbars *because that's the proceeds of the crime and, therefore the defendant is the robber.* That's A plus B equals C. N.T. 260–61 (emphasis added).

### 2

Since appellant's admission that the keys were his was a statement, we must decide whether appellant was entitled to *Miranda* warnings. It was conceded, and on appellant's motion to suppress his statement, the lower court found, that the police officer who elicited the statement "did not disclose to [appellant] the site or location where he found the keys," N.T. 232–33, and did not, before he questioned appellant about the keys, give appellant *Miranda* warnings, N.T. 234. The lower court also found, however, that in questioning appellant, the officer did not have "any intention to obtain any incriminating or inculpatory statement." N.T. 233. This being so, the court held, "[T]here was no violation of [appellant's] constitutional rights and no duty to warn him that if he claimed ownership of the keys he would be incriminating himself." N.T. 234.

We are of course bound by the lower court's findings of fact if the record supports them. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Williams,* 287 Pa.Superior Ct. 19, 429 A.2d 698 (1981). Here, the officer did not make any report of appellant's admission that the keys were his until the assistant district attorney interviewed him at the time of trial. Also, although the officer noted on a property receipt the recovery of the coat, scarf, sunglasses, gloves, and bag of money, he did not note the recovery of the keys. "[T]he keys, as far as I knew," the officer testified, "had no bearing on the case and had nothing to do with the case so I asked the defendant if they belonged to him and if so I would return

them." N.T. 221. The lower court's finding that this testimony by the officer of his subjective intent when he questioned appellant was credible is supported by the evidence of the officer's conduct in not reporting appellant's statement or noting the recovery of the keys. The finding is therefore binding on us.

The lower court's conclusion of law that a subjective standard is the right standard to apply is of course not binding on us, and it is at this point that our first difference with the lower court arises. For it is settled that the standard for determining whether an individual is in custody and is being subjected to interrogation is not subjective but objective. As the Supreme Court of the United States recently put it, "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police *should know* are *reasonably likely* to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) (footnotes omitted; emphasis added). Therefore, in determining whether appellant was being interrogated—and thus entitled to receive *Miranda* warnings—we must look to all of the surrounding circumstances, not merely the officer's testimony as to his own subjective intention.

When we look to the officer's uncontradicted testimony at the suppression hearing, N.T. 221–28, and at trial, N.T. 113–21, we can only conclude that the officer should have known that his question about the keys was reasonably likely to elicit an incriminating response from appellant. The officer was one of the officers on the scene. He himself found the keys in the discarded coat, with the robbery money in it, and he knew that appellant had been identified by the persons at the bar as the robber, not only by his face but by his coat. N.T. 222–23. It is, really, quite surprising that the officer did not realize the significance of an admission by appellant that the keys in the coat were his. Certainly the assistant district attorney realized the significance of the admission; and, we believe, so would

have any reasonably trained and experienced police officer. We therefore find the conclusion inescapable that appellant was entitled to *Miranda* warnings before being asked whether he owned the keys—the most damning evidence of all, because they clinched his identification as the robber. Since no *Miranda* warnings were given appellant, his statement should have been suppressed.[1]

### 3

Pa.R.Crim.P. 305 B(1)(b) provides that upon the defendant's request, the Commonwealth must disclose "any written confessions or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth[.]" Rule 305 D provides that this duty of disclosure continues up to and through the trial. Without question, the assistant district attorney violated this rule when he failed to disclose appellant's statement, and the lower court so held. Slip op. at 15. The lower court further held, however, that although the Commonwealth had violated Rule 305 B(1), no sanction was required because the other evidence against appellant was so great that the testimony concerning the keys was "wholly unnecessary" and "did not contribute to the verdict." Slip op. at 18–19. This is our second difference with the lower court. We believe that whenever the Commonwealth fails to comply with Rule 305 B(1)(b) with regard to a statement that was obtained in violation of *Miranda* rights and is therefore inadmissible, a sanction is required, and that here, that sanction should have been to grant a new trial.

In finding that the evidence of appellant's statement that the keys were his did not contribute to the verdict, the lower court relied on *Commonwealth v. Rodgers*, 472 Pa.

---

1. Appellant has argued that the statement should have been suppressed under *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). We do not reach this argument.

435, 372 A.2d 771 (1977). In *Rodgers*, after the defendant had been given *Miranda* warnings and had exercised his right to remain silent, he was asked various questions, in the absence of counsel, for the purpose of completing a police information form. One of these questions was whether he was known by any nicknames, to which he replied that he was called "Tubby." His motion to suppress this answer was denied by the trial court. On appeal the Supreme Court held that any error in not suppressing the statement was harmless because the defendant's use of the nickname "Tubby" was established through the testimony of several other witnesses; the police officer's testimony that the defendant had also said it was his nickname was cumulative only.

We find *Rodgers* of little help. It does stand for the proposition that *Miranda* violations may be subject to a harmless error test. But that proposition hardly disposes of this case. In *Rodgers* the evidence was indeed cumulative only. Here, by contrast, appellant's statement about the keys was *the* critical evidence. Eyewitnesses may be mistaken in recalling a robber's face, especially when the robber was seen in a "dimly lit" bar. And a coat found on a porch is not the suspect's simply because it fits him; he and the robber may be the same size. But when the suspect himself admits that his keys were in the coat, any doubt vanishes. Then, as the assistant district attorney said in his closing, "[Y]ou can't separate" the suspect and the robbery "with a thousand crowbars;" you know "absolutely one hundred per cent" that he was the robber.

In its brief to us the Commonwealth argues that the evidence that appellant admitted that his keys were in the coat was "*merely* one more link between [appellant] and the robbery, and if its admission was error at all, it was harmless beyond a reasonable doubt." Brief for Commonwealth at 15 (emphasis added). This certainly was not the assistant district attorney's evaluation of appellant's admission; he argued to the jury, correctly, that the admission was "absolutely one hundred per cent" proof of appellant's

guilt. The high purpose of a prosecutor is to do justice, not to hand onto a conviction. *Commonwealth v. Pfaff,* 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Miller,* 281 Pa.Superior Ct. 392, 422 A.2d 525 (1980). That purpose is not served by opportunistic characterizations of the evidence. *Shepard v. United States,* 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933) ("trial becomes unfair" if testimony accepted at trial for truth is accepted on appeal for impeachment) (CARDOZO, J.).

Finally, in *Rodgers* there was no violation of Pa.R. Crim.P. 305(B)(1). Pa.R.Crim.P. 305 E gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements. In many cases, ordering a continuance will be an adequate remedy. This will be so where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise. *E.g., Commonwealth v. Parente,* 294 Pa.Superior Ct. 446, 440 A.2d 549 (1982); *Commonwealth v. Bey,* 294 Pa.Superior Ct. 229, 439 A.2d 1175 (1982). Sometimes, however, the prejudice will go beyond surprise; if the prejudice is so great that the fairness of the trial has been affected, a new trial should be ordered. *Commonwealth v. Jenkins,* 476 Pa. 467, 383 A.2d 195 (1978).

Here, the evidence the Commonwealth failed to disclose—appellant's statement about the keys—was not admissible, for it was obtained in violation of appellant's *Miranda* rights. We respect the efforts of the lower court to salvage a trial already well along by holding a mid-trial suppression hearing. As we have already explained, however, we believe that the lower court's conclusion, after that hearing, that appellant's statement was admissible was error. This conclusion would by itself require a new trial, for given the importance of the statement, the error in admitting it cannot be characterized as harmless. But a new trial is additionally, and particularly, required in view of the Commonwealth's failure to disclose the statement, in violation of Pa.R.Crim.P. 305 B(1)(b).

In his dissenting opinion, Judge BROSKY agrees with our disposition of the issues on the merits but suggests that the issues have been waived "due to a failure to make a timely objection." Dissenting op. at 995. We find, however, that we are not persuaded by this suggestion.

First, the suggestion is made *sua sponte;* neither the Commonwealth nor the lower court has suggested waiver. It is true that when the objection was first made, the lower court stated that it was not "timely." But the court made plain that it did not consider that any waiver had occurred (nor, as we have said, does the Commonwealth argue that any had). Accordingly, the lower court proceeded to hear argument, conduct a suppression hearing, and consider and dispose of the objection in its opinion. Clearly the lower court was correct. The reason the objection was not made at once was because the Commonwealth had failed to disclose the existence of appellant's statement. We can find no basis for the dissent's statement, Dissenting op. at 995 n. 3, that despite this failure, appellant's counsel *"should* have become aware of the grounds for an objection."

And second, the cases cited by the dissent support not the dissent, but, rather, the conclusion that there was no waiver.

■ The dissent cites *Commonwealth v. Griffin,* 271 Pa.Super. 228, 412 A.2d 897 (1979), for the proposition that "[i]n the vast majority of cases," a "timely objection" means a "contemporaneous objection." That is of course true. However, the court in *Griffin* also said—in a passage immediately after the passage relied upon by the dissent: "But *contemporaniety of objection is not insisted upon as a value in itself,* rather it is required as the most convenient method of preventing a party from permitting error to insinuate itself into the record and complaining thereafter." *Id.,* 271 Pa.Superior at 236–37, 412 A.2d at 901 (emphasis added). The court then went on to discuss how defense counsel, *knowing the facts,* had deliberately, as a strategic decision, refrained from objecting. His belated objection was therefore held untimely. Here, defense counsel did *not*

know the facts, and not only was there no attempt to "insinuate [error] into the record and complain [ ] thereafter," but counsel strenuously attempted to excise the error, both by argument and at the ensuing suppression hearing. In these circumstances, to find the objection untimely would indeed be to "insist [ ] upon [contemporaniety] as a value in itself."

■■ *Commonwealth v. Folino*, 293 Pa.Super. 347, 439 A.2d 145 (1981), also cited by the dissent, similarly shows that no waiver occurred here. In *Folino*, defense counsel chose not to object to the trial judge excusing a witness for a conference. Then, "well after" the conference, *id.*, 294 Pa.Superior at 352, 439 A.2d at 147, counsel apparently had a change of mind and did object. Thus counsel permitted something to occur, and then, after it had occurred, claimed error. Nothing like that happened here.

Finally, *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), the remaining case cited by the dissent, also shows that no waiver occurred here. *Dilliplaine*, indeed, is the foundation of the waiver doctrine and is therefore especially apposite. There the Court said that the reason for "[r]equiring a timely specific objection to be taken in the trial court [is to] ensure that the trial judge has a chance to correct alleged trial errors." *Id.;* 457 Pa. at 258, 322 A.2d at 116. "This opportunity to correct alleged errors at trial," the Court explained, "advances the orderly and efficient use of our judicial resources." *Id.*, 457 Pa. at 258–59, 322 A.2d at 116." "[T]he trial court may promptly correct the asserted error," granting a new trial if necessary, and the appellate court, with the benefit of the trial court's ruling and discussion, may focus upon issues preserved for its review. *Id.* Here, all of these purposes have been served. The objection was specific. The objection was timely, being made when counsel became aware of facts that the Commonwealth had earlier concealed, and before any other witness testified, or before any other event occurred. The trial court did move promptly to correct the asserted error. And on appeal the issue has

been preserved for our review, and in disposing of that issue we have had the benefit of the full record made by the trial judge and of his careful discussion of the issue.

The judgment of sentence is reversed and the case is remanded for a new trial.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I respectfully dissent. While the majority opinion correctly applies the law to the two issues raised by appellant, these issues should not have been dealt with on their merits. They were waived due to a failure to make a timely objection.[1]

Officer Oakley testified that the coat containing the stolen money and the keys was taken into custody by the police. He further testified that he asked the defendant if they were his keys and, upon receiving an affirmative answer, returned them to him. No objection was made at that time. Defense counsel then conducted a cross examination, without mention of the *Miranda* or the Mandatory Disclosure violations. Discussions were then held in chambers, also without reference to these issues. Court was then recessed for the day.

A motion for mistrial, on the basis of the evidence regarding the return of the keys, was first made at the beginning of the court session the following day. The trial judge held at that time that "there was no timely objection."[2] I agree.

In *Commonwealth v. Griffin*, 271 Pa.Super. 228, 412 A.2d 897 (1979), this Court stated the applicable law on this question.

---

1. On appeal, appellee has not countered appellant by arguing this issue. However, this Court "may raise the issue of waiver sua sponte." *Commonwealth v. Triplett*, 476 Pa. 83 at 90 n. 10, 381 A.2d 877 at 881 n. 10 (1977).

2. While the trial court never withdrew this holding, a suppression hearing was held and the evidence ruled admissible for reasons dealt with in the majority opinion.

Case law in this jurisdiction has consistently held that the cornerstone of our waiver doctrine is that issues below not raised in a timely manner are foreclosed for purposes of appellate review. *Commonwealth v. Pritchitt*, 468 Pa. 10, 359 A.2d 786 (1976). In the vast majority of cases, the rubric "in a timely manner" requires contemporaneous objection; and our rules and cases rigorously enforce the contemporaneous objection rule. See, e.g., *Commonwealth v. Chuck*, 227 Pa.Superior Ct. 612, 323 A.2d 123 (1974); Pa.R.Crim.P. 1119(b); Pa.R.A.P. 302. *Griffin*, supra, 271 Pa.Superior at 236, 412 A.2d at 901.

A factual situation similar to the one before us was present in *Commonwealth v. Folino*, 293 Pa.Super. 347, 439 A.2d 145 (1981). There alleged error was not objected to immediately. Subsequent to the error, defense counsel continued the cross-examination and, after a brief recess, moved for a mistrial. The court concluded that, "... we may not review this claim as appellants have failed to preserve it with a timely objection." *Folino*, supra, 293 Pa.Superior at 352, 439 A.2d at 148. In the case before us, the length of time between the objectionable occurrence and the objection was considerably longer than that in *Folino*.

Further guidance can be found in *Folino*. A lack of timeliness was found there because the objection was not made when counsel became aware of the facts which created the grounds for the objection. *Id.* In the case before us, defense counsel had full exposure to the material facts which created grounds for the objection at the time the testimony regarding the keys was given.

First, vis-a-vis the Mandatory Disclosure violation, as soon as counsel had heard testimony about a statement made by the defendant, an objection should have been made. Counsel was aware that no information had been given to her regarding such a statement.[3]

---

**3.** It is, of course, possible that counsel was not consciously aware of the violation at the moment the testimony was given. We can, however, only judge the timeliness of an objection with regard to the moment when grounds for it appear; when counsel *should* have

▮▮▮▮▮▮▮▮▮▮▮▮

Second, with regard to the *Miranda* violation, the objection was also tardy. Statements only come under the rule in *Miranda* if they are incriminatory. Thus, if the testimony about defendant's statement had not appeared to be incriminatory at the time it was given, an objection need not have been made at that time. In that event, a valid objection could have been made when the facts came into the record which put the statement in an incriminatory light. However, in this case, all the information that made the statement incriminatory was already on the record.

It does appear that no curative measures, short of a mistrial, could have been taken even had the objection been timely made. However, this should not influence the decision to be made here. A contrary result would encourage the meretricious practice of "sandbagging." Namely, counsel could allow error to enter the record; fail to make a timely objection; wait and see if the trial seems to be progressing in his favor; and, if it is not, make an objection later demanding a mistrial. Then, even if the motion for a mistrial is denied, the issue could be raised on appeal.

We do not insinuate that this is the case here. Nonetheless, we know of no reliable method to distinguish between errors honestly discovered later and those kept hidden for tactical purposes. As a rule of general application therefore, the courts of this state have made unequivocal the requirement that objections be made in a timely fashion in order to be preserved for appellate review. That rule is binding on us in this case.

I would affirm the judgment of sentence.

become aware of the grounds for an objection. Indeed, any lack of such awareness on counsel's part is irrelevant. In *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, at 257, 322 A.2d 114, at 116 (1974), the Supreme Court of this Commonwealth rejected the shortcomings of counsel as an excuse for a failure to make a timely objection.