474 A.2d 617

**COMMONWEALTH of Pennsylvania**

v.

**Blanca MELENDEZ, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1984.

Filed March 30, 1984.

---

William C. Anderson, York, for appellant.

Floyd Paul Jones, York, for Commonwealth, appellee.

534

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

WICKERSHAM, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of York County.

Appellant, Blanca Melendez, was charged with delivery of heroin and criminal conspiracy. Appellant was arrested on those charges in December, 1981. On March 25, 1982, appellant went to trial before a jury after her motion for a continuance was denied, and was convicted of both counts. She filed post-trial motions on April 2, 1982, which were denied on June 23, 1982. On July 26, 1982, appellant was sentenced to serve a term of imprisonment at the State Correctional Institution at Muncy for not less than two (2) nor more than four (4) years. Her subsequent motion for reconsideration of sentence was denied and this timely appeal followed.

Appellant raises four issues for our consideration:

I. Whether the Court should have granted Defendant's Motion for a Continuance.

II. Whether the Court should have either suppressed or granted other relief with respect to a statement allegedly given by Defendant because of the Commonwealth's failure to provide that statement to Defendant.

III. Whether the Court should have admitted two packages of heroin into evidence.

IV. Whether the Court should have given a jury instruction concerning police officer testimony.

Brief for Appellant at 3.

Appellant first argues that the court should have granted her motion for a continuance. This motion was made on March 24, 1982, the day before the trial was to begin. The court discussed the motion with counsel in chambers on that date, and took testimony on the motion the following day. The ground for the motion was that appellant was suffering from heroin detoxification at the time of trial. Appellant's counsel stated that she had been admitted to a drug rehabil-

itation center in York two days previous to trial. However, she left the center after only one day, and appellant's counsel stated that she was physically unable to testify to the best of her ability.

Appellant testified that she had been addicted to heroin for about two years; she had not had any heroin for two days; on the previous day (March 24, 1982) she was feeling sick to her stomach, was shaky, had the chills, and could not think very well. (N.T. at 7). However, when asked by her counsel about her condition on that day, the actual day of trial, she testified:

Q. And how were you feeling this morning?

A. Just nervous.

Q. In what way?

A. I am still shaky.

Q. Are you having trouble concentrating?

A. No.

Q. Are you having trouble understanding the proceeding?

A. I don't think so. I can understand.

Q. You are sure?

A. Yes.

N.T. at 7–8.

Upon cross-examination, she testified that she hadn't seen a doctor in the last three days and did not know if it was necessary. (N.T. at 8).

The court itself also questioned her:

Q. Do you understand—did you understand the questions of your attorney?

A. Yes, sir.

Q. Do you understand the questions of the District Attorney?

A. Yes.

Q. Do you understand my questions?

A. Yes, sir.

\* \* \* \* \* \*

Q. Do you know what you are going to be on trial for?

A. Yes.

Q. What?

A. Conspiracy.

Q. With reference to what, to doing what?

A. To delivery.

 \*. \* \* \* \* \*

Q. But you do understand that you are charged with having dealt with heroin?

A. Yes, sir.

Q. And that is the reason you are present, to be on trial?

A. (Witness nodded head affirmatively.)

Q. Can you answer the questions that are put to you?

A. Yes, sir.

N.T. at 9–11.

 It is well settled that the grant of a continuance rests within the sound discretion of the trial court[1] and that the decision to deny the continuance will not be reversed unless a clear abuse of discretion is shown. *Commonwealth v. Ritchie*, 291 Pa.Super. 523, 436 A.2d 239 (1981). The lower court noted that appellant testified without hesitation and without apparent difficulty. Lower ct. op. at 1. Appellant called no other witnesses, and made no efforts to procure the presence of a physician or to present any other medical evidence to justify the motion. Given appellant's affirmative testimony that she understood the proceedings and was able to participate knowingly and intelligently, we

---

**1.** Pa.R.Crim.P. 301 concerns continuances:

 **Rule 301. Continuances**

 (a) The court may, in the interests of justice, grant a continuance, of its own motion, or on the motion of either party. The court shall on the record identify the moving party and state of record the court's reasons justifying the granting or denial of the continuance.

 (b) A motion for continuance on behalf of the defendant shall be made not later than forty-eight (48) hours before the time set for trial. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

find no abuse of discretion in the court's denial of a continuance.

Appellant also argues that the court erred in admitting the two packages of heroin into evidence because the Commonwealth failed to establish a proper chain of custody. Both Troopers Escalet and Lokhaiser testified that the heroin was given by Trooper Escalet to Trooper Lokhaiser at 2:40 p.m. on June 30, 1981 (N.T. at 32, 40). The second officer then transported the heroin to the crime lab for purposes of analysis. As established by defense counsel on cross examination, however, Trooper Lokhaiser had written the time of delivery as 1:00 p.m. in his police report. (N.T. at 44). In all other respects the report was consistent with the officers' testimony. Appellant argues that because of the time discrepancies in the report, which was not admitted into evidence, the Commonwealth did not establish beyond a reasonable doubt the chain of custody of the heroin.

We do not find this to be the case. The defense was certainly permitted to use the police report to attempt to impeach the credibility of either trooper. Any differences in testimony may be argued to the jury and such differences may go to the question of the weight of the evidence, but certainly did not entitle appellant to a demurrer for failure to establish the chain of custody. "There is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court." *Commonwealth v. Miller,* 234 Pa.Super. 146, 155, 339 A.2d 573, 578 (1975), *aff'd,* 469 Pa. 24, 364 A.2d 886 (1976). We find that such a reasonable inference existed here.

Appellant next argues that the court erred in denying her request for a jury instruction on Trooper Escalet's credibility. Appellant requested that the following instruction be given:

> When police officers testify you should consider them as fallible human beings, and therefore, may make mistakes. Their testimony, therefore, is not necessarily entitled to any greater or lesser weight than the testimony of other witnesses merely because they are policemen.

Brief for Appellant at 16.

The court in its charge to the jury (N.T. at 87–89) gave the standard charge regarding the weight, credibility, and interest of all witnesses, either prosecution or defense. Lower ct. op. at 4. It then asked counsel for any additional or corrective instructions.

The Commonwealth asked for a corrective instruction concerning Trooper Escalet's identification of appellant on a date prior to the incident at trial. (N.T. at 91). Counsel for appellant thereupon asked that his above instruction be given (N.T. at 92).

The court stated that it would try to equalize or balance the instruction to the satisfaction of both parties. (N.T. at 92–93). He then gave the following instruction:

> That doesn't mean, of course, that the officer's testimony, if you believe it, that he saw this Defendant on prior occasions, should likewise be disregarded because that goes to another question. That goes to the question of identification and it would be proper for you to consider that.
>
> On the other side, let me also state that by calling this to your attention now does not mean that I am giving overemphasis to the believability or credibility of the officer's testimony as against the Defendant's testimony.

N.T. at 94.

██ We find that this charge complies substantially with the appellant's requested instruction and, in combination with the standard charge used earlier in this case, adequately covers the law on the question of witness credibility. We do not agree that Trooper Escalet's testimony was highlighted at the expense of appellant. A trial court is not required to accept points submitted by a defendant

verbatim. The court is free to use its own form of expression. *Commonwealth v. Parks*, 281 Pa.Super. 38, 421 A.2d 1135 (1980). However, the substance of the requested points that are applicable must be accurately and adequately presented to the jury. *Id.* To decide whether this requirement is met, the charge to the jury is to be read as a whole. *Id.* Having done so, we find no reversible error in the charge as given by the trial court herein.

Finally, appellant argues that the court should have either suppressed or granted other relief with respect to a statement allegedly made by appellant, due to the Commonwealth's failure to provide that statement to appellant before trial.

Pa.R.Crim.P. 305 B(1)(b) provides that in all court cases, on request by the defendant, the Commonwealth shall disclose to the defendant's attorney:

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 305 D establishes a continuing duty to disclose:

If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material or witness.

Prior to trial, appellant had requested copies of written confessions or inculpatory statements, and the substance of any oral confessions or inculpatory statements. No such statements were provided to appellant. Nevertheless, during trial, at a side-bar conference, the Commonwealth, out of the presence of the jury, told the court that it intended to ask appellant about a certain statement that she had made

to one Officer Daryman. The Commonwealth then asked appellant:

Q. You recognize that man there with the red hair?

A. Yes, sir.

Q. You went to see him a while ago, didn't you?

A. What do you mean, a while ago?

Q. Well, you went and talked to him several days ago, didn't you?

A. Yes, I did.

Q. And at that time, isn't it true that you told him that you had been set up by another person by the name of Nunez in this thing?

A. Who?

Q. Nunez, N–U–N–E–Z.

A. That name don't sound bell.

Q. Did you tell him you had been set up by somebody?

A. I don't think I told him I was set up by somebody.

N.T. at 68–69.

Appellant's counsel then asked to approach the bench and requested suppression of the statement (if any) made to Officer Daryman due to a violation of (1) appellant's constitutional rights and (2) the mandatory disclosure rule of Pa.R.Crim.P. 305 B(1)(b). Counsel for appellant made no motion for a mistrial or curative instruction. The Commonwealth did not pursue the matter after sidebar,[2] and the statement was never admitted into evidence. Officer Daryman did not testify in the trial.

2. The Commonwealth may have attempted to further question appellant concerning the statement to Officer Daryman, when it was questioning appellant as to the occupants of her house:

Q. Sugar is not Nunez?

A. I don't know the last name. I only know her by Sugar.

Q. Did you say you told Officer Daryman?

A. When I saw her—

[Counsel for appellant]: Your Honor, I am going to object to any references to Officer Daryman for the reasons that I just stated a few minutes ago.

THE COURT: No, this is cross examination.

[District Attorney]: I will withdraw it.

N.T. at 74.

■■■ Pa.R.Crim.P. 305 E provides the remedy for failure to comply with the disclosure rule. "Under Section (E) of Pa.R.Crim.P. 305, when it becomes apparent that a party has failed to comply with the provisions of the Rule, the trial court has broad discretion in choosing an appropriate remedy." *Commonwealth v. Parente*, 294 Pa.Super. 446, 451, 440 A.2d 549, 552 (1982). The court may order the offending party to permit discovery or inspection, or it may grant a continuance, or it may prohibit the use of the evidence not disclosed, or it may enter such order as it deems just under the circumstances. Here, the court actually did nothing other than to indicate to the district attorney that he was "getting to the area of overkill again" and was "on dangerous ground"; the court appeared to let the decision to proceed up to the district attorney, who elected not to do so. (N.T. at 70).

Our examination of the relevant case law has disclosed no case exactly on point. The cases cited by appellant in her brief involve situations where the inculpatory statement was admitted over objection of the defense. In *Commonwealth v. Jenkins*, 476 Pa. 467, 383 A.2d 195 (1978), the defendant testified in his own behalf that he did not know the victim and had never spoken to him. The prosecution was then permitted, over defendant's objection, to use a police officer's report of an oral statement given by defendant, in which defendant had admitted speaking to the victim on the day of the crime. The trial court refused to grant a new trial, because despite the prosecutor's misconduct (in not disclosing the inculpatory statement), the claimed prejudice to defendant was not shown. The supreme court reversed and granted a new trial, holding that in view of the critical importance of defendant's credibility and the fact that the prosecution's use of the report undeniably damaged appellant's credibility, the nondisclosure of the statement was not harmless error. *Id.*, 476 Pa. at 473, 383 A.2d at 198.

In *Commonwealth v. Keeler*, 302 Pa.Super. 324, 448 A.2d 1064 (1982), the undisclosed inculpatory statement was re-

ferred to during the direct examination of a police officer. Defendant asked for a sidebar and objected on the basis of nondisclosure of the statement. He moved for a mistrial and to strike the testimony; both motions were denied. However, the trial judge later changed his mind and held a suppression hearing the following day to determine whether the statement should have been suppressed. After the hearing was held, the court again found no reason to suppress the statement. We affirmed and held that the procedure adopted by the lower court did not deny defendant a fair trial. *Id.,* 302 Pa.Superior Ct. at 340, 448 A.2d at 1072.

In *Commonwealth v. Johnson,* 310 Pa.Super. 385, 456 A.2d 988 (1983), the undisclosed inculpatory statement was also presented by a police officer. Defendant moved for a mistrial, which was denied. As in *Keeler,* the trial judge decided, following further testimony, to conduct a suppression hearing, after which it ruled that the statement was admissible. We reversed and granted defendant a new trial, based on violations of defendant's *Miranda* rights and on a violation of the disclosure rule. The court stated: "We believe that whenever the Commonwealth fails to comply with Rule 305 B(1)(b) with regard to a statement that was obtained in violation of *Miranda* rights and is therefore inadmissible, a sanction is required, and that here, that saction should have been to grant a new trial." *Id.,* 310 Pa.Superior Ct. at 393, 456 A.2d at 992.[3]

Finally, in a case decided by this court just a few months ago, *Commonwealth v. Palmer,* 319 Pa.Super. 56, 465 A.2d

---

**3.** In at least four recent cases involving nondisclosure of either inculpatory statements or eyewitness statements, which were all admitted into evidence through testimony of the participating witness, the trial courts, upon objection by defendant due to nondisclosure, all offered to defendant the remedy of a continuance. In most cases, this remedy was refused by the defendant, but upon appeal, a continuance, plus cautionary instructions to the jury in at least one case, was held to be an adequate remedy for nondisclosure. *Commonwealth v. Rodgers,* 500 Pa. 405, 456 A.2d 1352 (1983); *Commonwealth v. Lamb,* 309 Pa.Super. 415, 455 A.2d 678 (1983); *Commonwealth v. Parente,* 294 Pa.Super. 446, 440 A.2d 549 (1982); and *Commonwealth v. Bey,* 294 Pa.Super. 229, 439 A.2d 1175 (1982).

1050 (1983), we affirmed the trial court's grant of a new trial in a similar case. The Commonwealth had attempted to introduce into evidence, on direct examination, an undisclosed inculpatory statement made by the defendant to a police officer. Defendant's objection was sustained. Later, during cross-examination of defendant, the district attorney asked if defendant had made any inculpatory statements to the officer. Defendant said no. On rebuttal, the officer was called back to the stand and, over defense objection, was allowed to introduce the inculpatory statement. The trial court later decided that it had been error to allow admission of the statement for impeachment purposes. *Id.*, 319 Pa.Superior Ct. at 58, 465 A.2d at 1051. We found no abuse of discretion in the grant of a new trial.

 The instant case is unlike any of the above cases in two important aspects. The alleged inculpatory statement made by appellant to Officer Daryman was *never* admitted into evidence at any point in appellant's trial. While this appears to have been the result of a decision by the prosecutor rather than by order of the court, (N.T. at 70), the fact remains that the statement itself was not admitted. Also, this incident occurred entirely during cross-examination of appellant, rather than another witness. We note also that counsel for appellant asked only for suppression of the statement; he did not ask for a mistrial, a continuance, or curative instructions.[4]

We do not condone violation of the discovery rules, particularly where nondisclosure of something as crucial as an inculpatory statement is involved. However, since appellant merely asked for suppression of the statement, and since the prosecutor did not pursue the matter nor admit the statement into evidence, combined with a *sua sponte* jury instruction by the court to disregard any implication that appellant may have had a conversation with "other persons in the past," (N.T. at 86), we hesitate to find an abuse of discretion.

**4.** In his motion for a new trial, counsel for appellant did raise this issue.

Nonetheless, inasmuch as the statement allegedly given by appellant apparently indicated that she believed she had been set up by someone, such statement was in conflict with her defense at trial, namely that she was not involved in the incident at all. Since this case was essentially one of credibility between her testimony and that of the undercover police officer, she argues that she was prejudiced by the question having been asked of her. If she had known of the existence of the inculpatory statement, she may not have chosen to testify, and she would probably have moved to suppress it because it was allegedly given to the police at a time when counsel was not present.

Appellant's argument is well taken. In view of our recognition of the importance of a criminal defendant's credibility, and the fact that the prosecutor's nondisclosure went solely to the issue of appellant's credibility, the prejudicial impact of the nondisclosure, intentional or otherwise, cannot be considered harmless error. *Commonwealth v. Jenkins, supra,* 476 Pa. at 473, 383 A.2d at 198. An error is not harmless unless it could not possibly have affected the jury in reaching its verdict. *Commonwealth v. Settles,* 442 Pa. 159, 275 A.2d 61 (1971). "[A] new trial might still have been necessary if it had been shown that the nondisclosure of the notes had affected the fairness of the trial." *Commonwealth v. Parente, supra,* 294 Pa.Superior Ct. at 452, 440 A.2d at 552.

Here, appellant had no opportunity to (1) object to the statement until she was questioned concerning it on cross-examination, (2) contest its voluntariness, (3) timely ask that it be suppressed, or (4) do anything concerning it, because the Commonwealth chose not to inform her as to its existence prior to trial. Since there was no suppression hearing held by the lower court to determine the voluntariness of, or the prejudice resulting from, the statement, as in *Commonwealth v. Johnson, supra* and *Commonwealth v. Keeler, supra,* we find it necessary to reverse and remand this case to the lower court for a new trial.

Reversed and remanded for a new trial.