580 A.2d 379

**COMMONWEALTH of Pennsylvania**

v.

**Roger A. WELSHANS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 21, 1990.

Filed Sept. 19, 1990.

440

Deborah A. Weinman, Williamsport, for appellant.

Thomas A. Marino, Asst. Dist. Atty., Williamsport, for Com.

Before JOHNSON, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from a judgment of sentence for driving under the influence of alcohol,[1] and homicide by vehicle while driving under the influence of alcohol.[2] Appellant argues that (1) the trial court erred in refusing to suppress results of a blood alcohol test; (2) trial counsel was ineffective for failing to object to: (a) the admission of the results of that test and separate blood typing tests; and (b) the presentation of certain expert testimony; and (3) the sentence imposed was illegal.[3] For the reasons that follow, we vacate the judgment of sentence for driving under the influence, and affirm the judgment of sentence on the remaining charge.

Appellant was arrested on July 27, 1988, and charged with the above-mentioned crimes. On February 10, 1989, following a jury trial, he was convicted of those charges. Post-verdict motions were timely filed on February 21, 1989, and denied by order dated May 24, 1989. On September 19, 1989, appellant was sentenced to thirty-seven-to-eighty-four months incarceration for homicide by vehicle while driving under the influence, and one-to-eighteen months incarceration for driving under the influence, those sentences to be served consecutively. At trial, appellant was represented

1. 75 Pa.C.S.A. § 3731(a)(1) and (4).

2. 75 Pa.C.S.A. § 3735.

3. We note that the argument section of appellant's brief is not divided into separate sections, and does not have distinctive headings. For this reason, appellant's brief does not comply with the requirements of Pa.R.A.P. 2119(a). Although we disapprove of appellant's disregard of the Rule and the resulting lack of clarity and precision in the presentation of his arguments, his failure has not substantially hampered our review, and thus we shall address each of his arguments.

by private counsel. However, on September 21, 1989, he was granted leave to proceed *in forma pauperis.* Counsel from the Public Defender's Office of Lycoming County then was appointed to pursue this appeal, notice of which was timely filed on September 29, 1989.

The facts giving rise to this case are as follows. On July 15, 1988, the van appellant was driving crashed into the side of a bridge in Lycoming County. Appellant and his passenger were injured, and the passenger later died as a result of the injuries sustained in the crash. Appellant was removed from the van by police, and paramedics transported him to Jersey Shore Hospital for treatment. At the time he was removed from the van, appellant smelled of alcohol. Hospital personnel drew blood and performed a blood alcohol test for diagnostic purposes. Subsequently, the investigating police officer arrived and requested that a blood alcohol test be performed. Hospital personnel informed him that a test already had been performed, which indicated that appellant's blood alcohol content (BAC) was .18%. Several days later, police obtained the written results of the test with a search warrant. Appellant then was arrested and charged with the above-mentioned crimes.

■ Appellant first argues that the trial court erred in refusing to suppress certain evidence. Specifically, appellant argues that the trial court erred in refusing to suppress the results of the blood alcohol test because the results were obtained in violation of the Fourth Amendment.

Our standard of review of a court's denial of a motion to suppress evidence that allegedly was obtained in violation of the Fourth Amendment is well-settled:

[O]ur function as an appellate court reviewing a denial of a motion to suppress is to determine:

[W]hether the record supports the suppression court's factual findings and the legitimacy of the inferences and the legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evi-

dence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Vinson,* 361 Pa.Super. 526, 530, 522 A.2d 1155, 1157 (1987). The implied consent statute, 75 Pa.C.S.A. § 1547(a), is also helpful in evaluating appellant's claim. Section 1547(a) provides, in relevant part, that:

Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both....

*Id.* This Court has upheld the constitutionality of a warrantless search and seizure under § 1547(a)(1), interpreting the requirement that the officer have "reasonable grounds" in the belief that the driver was driving under the influence as requiring that the officer have "probable cause" to believe that the driver was under the influence. *Commonwealth v. Quarles,* 229 Pa.Super. 363, 388, 324 A.2d 452, 466 (1974).[4] Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance. *Commonwealth v. Smith,* 382 Pa.Super. 288, 555 A.2d 185 (1989) (probable cause existed where defendant smelled of alcohol, had glassy bloodshot eyes). *See also Commonwealth v. Hipp,* 380 Pa.Super. 345, 551 A.2d 1086 (1988)

**4.** We note that § 1547(a)(2) of the implied consent law extends to drivers of vehicles "involved in an accident in which the operator or passenger of a vehicle or a pedestrian required treatment at a medical facility or was killed," even when there is no cause to believe that the driver was under the influence. *Id.* This subsection was recently held to be unconstitutional by this court. *See Commonwealth v. Danforth,* 395 Pa.Super. 1, 576 A.2d 1013 (1990) (en banc); *Commonwealth v. Kohl,* 395 Pa.Super. 73, 576 A.2d 1049 (1990).

(probable cause existed where appellant had strong odor of alcohol on his breath); *Commonwealth v. Haynos,* 363 Pa.Super. 1, 525 A.2d 394 (1987) (probable cause existed where arresting officer observed defendant in one-car accident and defendant smelled of alcohol), *allocatur denied,* 517 Pa. 604, 536 A.2d 1329 (1987).

Here, Officer Arthur Robinson of the Lycoming County Police testified that "[w]hen I arrived at the scene of the accident the road conditions were good [although] [t]he road was damp in areas...." *See* N.T., February 8, 1989 at 81. Officer Robinson also testified that there were no accumulations of water on the roadway. *Id.* Furthermore, at the suppression hearing, Officer Robinson testified that when he arrived at the accident scene he observed that a van had struck the bridge structure. He then approached the vehicle and attempted to remove appellant from the driver's seat. He stated that, as he was doing so, he "smelled an odor of alcohol." *See* N.T. February 8, 1989 at 3–4. Upon further examination, he stated that the odor of alcohol he detected came from "on the defendant." *Id.* at 7. The record, therefore, reveals that appellant smelled of alcohol and was involved in a single vehicle accident at a time when the weather was clear, and the road conditions were good. These facts were sufficient to provide the police with probable cause to believe that appellant had been driving while under the influence. Therefore, the police were justified in having a blood test performed upon appellant, and the trial court did not err in refusing to suppress the test results.

Appellant next argues that trial counsel was ineffective for failing to object to the presentation of blood alcohol and typing test results, and certain opinion evidence. We shall address these claims, *seriatim.*

Our Supreme Court has summarized the law governing claims of ineffective assistance of counsel as follows:

[t]here are three elements to a valid claim of ineffective assistance. We inquire first if the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable soundness. If

so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect on the outcome of the proceedings.

*Commonwealth v. Davis,* 518 Pa. 77, 83, 541 A.2d 315, 318 (1988).

■ Appellant's first specific claim is that trial counsel was ineffective for failing to object to the presentation of the results of the blood alcohol test because the Commonwealth failed to establish a sufficient chain of custody. We disagree. The law regarding appellant's underlying claim is well-settled. As we stated in *Commonwealth v. Melendez,* 326 Pa.Super. 531, 474 A.2d 617 (1984):

[t]here is no requirement that the Commonwealth establish the sanctity of its exhibits beyond all moral certainty. It is sufficient that the evidence, direct and circumstantial, establish a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court.

*Id.,* 326 Pa.Superior Ct. at 537, 474 A.2d at 620.

Here, the record reveals that the Commonwealth presented the testimony of the medical technologist who drew the blood from appellant, and the medical technician who actually performed the blood alcohol analysis. The technologist testified that she handled the sample according to routine procedures. This handling included labeling the sample for identification purposes and refrigeration to ensure its preservation. *See* N.T., February 8, 1989 at 50–52. The technician testified that she had been doing this type of work for twenty-two years. She also stated that she followed routine procedures for identification, handling and analysis of appellant's blood sample. *Id.* at 55–59. Furthermore, we have carefully reviewed the record, and we note that appellant has presented no evidence to call into question the accuracy of the witnesses' testimony. Under these circum-

stances, we are satisfied that the evidence presented establishes a reasonable inference that the identity and condition of the exhibits remained unimpaired until they were surrendered to the court. Because appellant's argument regarding the chain of custody is meritless, trial counsel cannot be held to have been ineffective for failing to raise it. *See Commonwealth v. Blagman,* 350 Pa.Super. 367, 504 A.2d 883 (1986).

Appellant next argues that trial counsel was ineffective for failing to object to the presentation of evidence regarding the blood typing tests by which police established that the blood on the driver's side of the van was his.[5] This claim is meritless.

The Commonwealth presented testimony from both the trooper who collected the blood samples from the driver's side of the van and the criminologist who performed the typing analysis which established that the blood was appellant's type. The Commonwealth also presented testimony from the medical technologist whose analysis established that the blood type of the decedent, who appellant alleged was driving the vehicle, did not match that found on the driver's side of the vehicle. The trooper stated that he followed standard procedures for the collection and identification of blood samples. *See* N.T., February 9, 1989 at 98. The criminologist, who was qualified as a blood typing expert, in turn testified regarding the procedures he followed in his analysis of the blood samples from the vehicle. *Id.* at 100–104. The medical technologist testified that she had been working in the field for ten years, and that there was nothing unusual about her handling of the sample that she analyzed. *Id.* at 105–07. Appellant did not object to this testimony, nor did he offer any evidence to suggest that the tests were not properly performed. Again, we conclude that the Commonwealth has established a reasonable inference that the identity and condition of the samples

5. This evidence was important to the Commonwealth's case because it rebutted appellant's claim that it was the decedent who had been driving the van.

remained unimpaired until they were surrendered to the court. Therefore, appellant's claim regarding the chain of custody of the blood typing tests is meritless, and counsel was not ineffective for failing to raise it. *See Commonwealth v. Blagman, supra.*

■ Appellant's next argument is that trial counsel was ineffective for failing to object to the testimony of an expert witness. Specifically, appellant argues that trial counsel should have objected to the testimony of Don Weaver, a clinical pathologist, regarding the behavior of a person with a .18% BAC reading. We disagree.

The situation we are faced with in this case is clearly distinguishable from the situation in *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26 (1988), the case appellant cites in support of his argument. In *Gonzalez,* the appellant was convicted of driving while his BAC was greater than .10%. On appeal, he argued that the trial court erred in admitting a police officer's statement that, based on appellant's .09% BAC over three hours after arrest, "appellant's blood alcohol at the time of the accident could have been .125 percent." *Id.,* 519 Pa. at 121, 546 A.2d at 28. The Supreme Court held that the officer's testimony was not admissible to show that appellant had violated § 3731(a)(4) because there was no factual support for finding that appellant's blood alcohol content was .125% at the time of his arrest, and appellant's lower BAC at the time of his arrest could not be used to "relate back" or extrapolate a higher BAC at the time of his arrest.

■ Here, the pathologist did not testify to appellant's BAC at the time of the accident, or attempt to use a BAC of less than .10% to "relate back" and establish that appellant's BAC was greater than .10% before the test was administered. He merely testified regarding the effect alcohol would have on an average individual with the BAC appellant had after he arrived at the hospital. Furthermore, we note that approximately two hours after the accident appellant's BAC was much greater than .10%.

Thus, the information upon which the pathologist's testimony was based clearly was relevant to the issue of whether appellant violated Section 3731(a)(4). *See Commonwealth v. Speights*, 353 Pa.Super. 258, 509 A.2d 1263 (1986) (BAC measurement of .12% sufficient to support finding appellant guilty of violating § 3731(a)(4) where test administered two hours and forty five minutes after arrest); *see also Commonwealth v. Boyd*, 373 Pa.Super. 298, 541 A.2d 21 (1988) (where appellant drove in erratic manner and smelled of alcohol, BAC reading of .16% thirty minutes after arrest sufficient to permit finding that appellant violated § 3731(a)(4)). The expert's testimony, therefore, was properly admitted, and, accordingly, appellant's argument that trial counsel was ineffective for failing to object to the pathologist's testimony is meritless.

■ Appellant's final argument is that the trial court erred in imposing separate sentences for homicide by vehicle and driving under the influence. We are constrained to agree.

75 Pa.C.S.A. § 3731 states, in relevant part, that:

(a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving....

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

*Id.*

75 Pa.C.S.A. § 3735 states, in relevant part, that:

(a) **Offense defined.**—Any person who unintentionally causes the death of another person as the direct result of a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the third degree when the violation is the cause of death....

*Id.* This issue is controlled by our recent decision in *Commonwealth v. Voshall,* 387 Pa.Super. 47, 563 A.2d 936 (1989). In *Voshall* Judge Brosky stated that:

[In evaluating merger claims] a trial court need not tax itself with the burden of determining what Commonwealth interests are at stake by attempting to sort out the number of offenses actually committed against the Commonwealth or by endeavoring to compartmentalize each harm actually present in a given criminal act. Instead, a sentencer need only determine if any of the crimes necessarily involve each other, i.e., whether any are lesser included offenses of the other charge(s).

Therefore, it should be obvious to anyone reading the ... provisions of the Motor Vehicle Code that the elements of the offense of driving under the influence are intrinsic to the statute regulating the conduct of one who commits the crime of homicide by vehicle while driving under the influence. The language of this latter provision makes it abundantly clear that it applies to those who have violated and have been convicted of Section 3731 [relating to driving under the influence]. The violation and conviction of Section 3731 is an element of homicide by vehicle while driving under the influence. Necessarily and logically, then, the elements of Section 3731 are implicitly included in Section 3735, making the former a lesser included offense of the latter....

The act of driving under the influence is the only basis upon which [defendant] could have [been convicted of] the crime of homicide by vehicle while driving under the influence. He did not commit any other criminal act beyond that which was necessary to establish the bare elements of homicide by vehicle while driving under the influence. Accordingly, we vacate the judgment of sentence imposed pursuant to [defendant's conviction for] driving under the influence....

*Id.,* 387 Pa.Superior Ct. at 52–53, 563 A.2d at 938–39 (citations omitted).

Here, the trial court imposed separate sentences for driving under the influence and homicide by vehicle while

driving under the influence. Under *Voshall,* this sentence clearly cannot stand, and accordingly, we vacate the judgment of sentence imposed for driving under the influence.

For the foregoing reasons, we vacate the judgment of sentence for driving under the influence and affirm the judgment of sentence for homicide by vehicle while under the influence.

Judgment of sentence affirmed as modified.