470 A.2d 145

**COMMONWEALTH of Pennsylvania**

v.

**Kevin Joseph THIEL, Appellant.**

Superior Court of Pennsylvania.

Submitted May 24, 1983.

Filed Dec. 16, 1983.

Michelle M. Hawk, Erie, for appellant.

Jeffrey E. Leber, District Attorney, Coudersport, for Commonwealth, appellee.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

Appellant Kevin Thiel was convicted by a jury of delivery of cocaine, and on December 17, 1981 was sentenced in the Potter County Court of Common Pleas to serve one to three years in Rockview State Penitentiary and to pay a fine of $2,500. He appeals the judgment of sentence.

Appellant raises four issues, only one of which we need address. We agree with appellant that the trial court erred in admitting into evidence two airplane tickets which the Commonwealth had not provided to appellant despite his pretrial discovery request for all tangible evidence. Pa.R.

Crim.P. 305 B(1)(f), 42 Pa.C.S.A. We will reverse and remand for a new trial.

On January 23, 1980, undercover police officers arrested Pamela Sue Palmer and charged her with delivering to them one-quarter ounce of cocaine. Palmer negotiated a plea bargain and was sentenced to one to five years in prison. Pursuant to the plea bargain she agreed to cooperate in all respects in other prosecutions for illegal drug sales with which she had been connected. Palmer identified Kevin Thiel as the supplier of the cocaine she had sold to the undercover policemen. As a result, Thiel was arrested on December 2, 1980, and charged with delivery of a controlled substance. At a preliminary hearing held on December 18, 1980, Palmer refused to testify and invoked her Fifth Amendment right against self-incrimination. Consequently the district justice dismissed the charge against Thiel. The judge who had sentenced Palmer later informed her that she was violating her plea agreement and that as a possible consequence she would have to serve the remainder of her sentence at the state penitentiary rather than the Erie rehabilitation facility. Palmer then agreed to testify against appellant, who promptly was arrested and re-charged.

Before trial appellant requested, pursuant to Pa.R. Crim.P. 305 B(1)(f), the disclosure of all tangible evidence in the Commonwealth's possession. The rule at issue provides:

### B. Disclosure by the Commonwealth

(1) *Mandatory:* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence.

In response to Thiel's request the Commonwealth identified as tangible evidence in its possession the cocaine allegedly delivered from Thiel to Palmer to police and a laboratory analysis of the cocaine. The Commonwealth did not disclose its possession of two airplane ticket stubs bearing the names "Mr. and Mrs. K. Sutton." The Commonwealth had information that Thiel had purchased these tickets for himself and Palmer on a return trip from Florida, where the two had gone to pick up drugs.

In its case-in-chief at trial, the Commonwealth presented Palmer's testimony that she and Thiel had met in Florida to pick up drugs and had flown back to Pennsylvania together. Thiel in his own defense testified that he had gone to Florida to do tile work on a home there and to take a vacation with Palmer, and not to pick up drugs as Palmer said. Under cross-examination, Thiel stated that he flew back under his own name, that he did not know a K. Sutton, and that he had never used that name. In rebuttal the Commonwealth recalled Palmer to the stand and had her identify the two airplane tickets bearing the names "Mr. and Mrs. K. Sutton" as the ones Thiel had purchased for their return trip to Pennsylvania. Defense counsel objected to admission of the tickets on the ground that the Commonwealth had not disclosed them despite the defendant's pretrial discovery request. The court overruled the objection and permitted the tickets to be introduced.

"Traditionally, the right of a criminal defendant to discovery of prosecution evidence has been restricted.... In recent years, however, there has been a 'growing realization that disclosure rather than suppression of relevant materials ordinarily promotes the proper administration of justice.'" *Commonwealth v. Hamm,* 474 Pa. 487, 494, 378 A.2d 1219, 1222–23 (1977), *quoting Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973, 984 (1966). In an effort to expand discovery in criminal cases, the Pennsylvania Supreme Court on June 29, 1977

liberalized criminal discovery in Pennsylvania by replacing former Pa.R.Crim.P. 310 with new Rule 305. Rule 310 had limited the defense to discovery of the defendant's written statements or confessions in the hands of the Commonwealth, unless the defense could show exceptional and compelling circumstances warranting further discovery. In contrast, Rule 305 B, under which appellant sought discovery, provides for a gamut of pretrial discovery of the evidence held by the Commonwealth.

Discoverable evidence in the Commonwealth's possession may be discoverable either by mandate of the rule (305 B(1)) or in the discretion of the trial court (305 B(2)), depending on the type of evidence sought. In exercising its discretion to grant or deny a request for discretionary discovery, the court is to be guided by the following principle of the ABA *Standards Relating to Discovery and Procedure Before Trial,* § 1.2 (Approved Draft, 1970): "In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with the protection of persons, effective law enforcement, the adversary system, and national security." Pa.R.Crim.P. 305 Comment. Since this liberal principle governs *discretionary* discovery, it follows that the Commonwealth, when faced with a *mandatory* discovery request for tangible evidence under Rule 305 B(1)(f), should exercise the utmost good faith to disclose to the defendant all material tangible evidence in its possession.

The Commonwealth argues that the airplane tickets were not material to this case until Thiel took the stand to contradict Palmer's testimony as to the purpose of their Florida trip, and concludes that the mandatory discovery provision of Rule 305 B(1)(f) did not apply to the tickets pretrial.

It is true that we cannot expect the Commonwealth to anticipate the materiality of all possible rebuttal evi-

dence, *Commonwealth v. Oliver*, 251 Pa.Super. 17, 379 A.2d 309 (1977), and we can imagine cases in which the materiality of certain evidence in the Commonwealth's possession might not become apparent until after trial has begun. On the other hand, Rule 305 B(1) makes no distinction between rebuttal evidence and evidence the Commonwealth expects to use in its case-in-chief. In cases where the prosecutor can reasonably predict possible defense strategies and evidence, he must also be held to reasonable anticipation of what evidence in his possession might be material in rebuttal. *See Commonwealth v. Jenkins*, 476 Pa. 467, 383 A.2d 195 (1978); *Commonwealth v. Jackson*, 457 Pa. 79, 319 A.2d 161 (1974).

In this case the defendant was charged with delivering cocaine to Palmer, who then delivered it to police. The prosecutor knew well before trial that Palmer's testimony would be indispensable to the prosecution as the only evidence linking the defendant to the contraband. The prosecutor therefore must have known that Palmer's credibility would be crucial to the case. Her credibility was open to collateral attack, since her testimony was given in exchange for sentencing leniency and could be portrayed by the defense as serving her penal interest. However, in the absence of any other extrinsic evidence to affect the jury's credibility determination, it was also an easy guess that the defendant would not stand mute and let Palmer's story go uncontradicted. The prosecutor therefore could anticipate that defense counsel might put Thiel on the stand to contradict Palmer's story with his own version of events, including the trip to Florida.

In this light the Commonwealth certainly should have realized that any evidence in its possession that could bolster Palmer's credibility while impeaching the defendant's would be material evidence. The ticket stubs fit that bill. By eliciting Thiel's statement on cross-examination that he had never used the name "K. Sutton", then recalling Palmer to identify the airplane tickets as the ones purchased by Thiel, the Commonwealth in fact succeeded in

torpedoing the defense strategy of relying heavily on Thiel's credibility.

■ Discovery decisions predating the enactment of liberalized Rule 305 recognize that the Commonwealth's failure to disclose possible impeachment or rebuttal evidence may highly prejudice the defendant's case and lead to reversible error when the evidence is sprung on the defendant unawares. *Commonwealth v. Jenkins, supra; Commonwealth v. Jackson, supra.* Discovery of prosecution evidence therefore has not been limited to evidence the Commonwealth expects to use in its case-in-chief. In the *Jackson* case, Justice Roberts commented on the Commonwealth's failure to disclose the names of two key witnesses pretrial:

The failure of the Commonwealth to afford appellant reciprocal discovery rights made it impossible for appellant either to investigate the two witnesses whom the Commonwealth called to refute his alibi, or to explore the weaknesses in their stories. By placing appellant at the scene of the crime and by placing a pistol in his hand, the testimony of these two witnesses (whose names the Commonwealth refused to disclose) refuted appellant's alibi. These witnesses were essential to the Commonwealth's case; their credibility indispensable. Had appellant been afforded reciprocal discovery, he would have had the opportunity to be better prepared for cross-examination, and he may have had a better chance to impeach the Commonwealth's witnesses.

457 Pa. at 84, 319 A.2d at 164. Here too, the Commonwealth's failure to disclose the tickets in its possession deprived appellant's counsel of any chance to investigate the tickets' genuineness or explore other weaknesses in their validity as impeaching evidence. As a consequence, the key issue in the case—witness credibility—was heavily weighted in favor of the Commonwealth when it introduced virtually unimpeachable real evidence to support the veracity of its witness.

Had the Commonwealth disclosed the airplane tickets pretrial, it could have introduced them during Palmer's

testimony as circumstantial evidence of Thiel's use of an alias on the Florida trip. Instead, the Commonwealth left the tickets conspicuously out of its short pretrial list of tangible evidence in its possession, and used the tickets skillfully in rebuttal. Although we impute no intentional impropriety to the prosecutor, his tactic at least has the appearance of baiting the defendant into perjury, then exposing the perjury by introducing surprise evidence. Our court has condemned such gamesmanship in criminal prosecutions. *See Commonwealth v. Bartram,* 240 Pa.Super. 495, 367 A.2d 1121 (1976); *Commonwealth v. Mace,* 234 Pa.Super. 463, 341 A.2d 505 (allocatur refused), *cert. denied,* 423 U.S. 996, 96 S.Ct. 423, 46 L.Ed.2d 370 (1975). As our Court said in *Mace, quoting Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215, 218–19 (1963):

> Society wins not only when the guilty are convicted but when criminal trials are fair .... A prosecution that withholds evidence on demand of an accused....helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the result of guile' ....

234 Pa.Super. at 470, 341 A.2d at 508–09.

In the circumstances of this case we hold that the airline tickets clearly were material pretrial and should have been disclosed to the defendant under Rule 305 B(1)(f). *Cf. Commonwealth v. Chapman,* 255 Pa.Super. 265, 386 A.2d 994 (1978) (undershorts found at scene of rape material evidence where guilty verdict must have been based at least in part on fact defendant was not wearing undershorts when arrested); *Commonwealth v. Dobson,* 302 Pa.Super. 57, 448 A.2d 92 (1982) (Commonwealth withheld burglar's watch despite defense request for exculpatory tangible evidence; on charge of simple assault defendant tried to prove owner of burglarized premises had seen watch on defendant's wrist rather than screwdriver in his hand; held, watch

not material evidence where police in fact found screwdriver in defendant's back pocket, defense was able to present its theory through testimony, and watch not produced at trial by either party).

The only question remaining is the appropriate remedy. When the Commonwealth attempted to rebut the defendant's testimony by introducing the tickets through Palmer, defense counsel promptly objected that the tickets had not been disclosed to him under Rule 305 B(1)(f). At that point the trial court had several options. Rule 305 E provides:

**E.  Remedy**

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

This provision

gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements. In many cases, ordering a continuance will be an adequate remedy. This will be so where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise. *E.g., Commonwealth v. Parente,* 294 Pa.Superior Ct. 446, 440 A.2d 549 (1982); *Commonwealth v. Bey,* 294 Pa.Superior Ct. 229, 439 A.2d 1175 (1982). Sometimes, however, the prejudice will go beyond surprise; if the prejudice is so great that the fairness of the trial has been affected, a new trial should be ordered. *Commonwealth v. Jenkins,* 476 Pa. 467, 383 A.2d 195 (1978).

*Commonwealth v. Johnson,* 310 Pa.Super. 385, 395, 456 A.2d 988, 993 (1983). *See also Commonwealth v. Jacobs,* 501 Pa. 139, 460 A.2d 728 (1983); *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175 (1983); *Commonwealth v. Glass,* 495 Pa. 405, 434 A.2d 707 (1981), *cert. denied,* 456

U.S. 932, 102 S.Ct. 1984, 72 L.Ed.2d 450 (1982), *Commonwealth v. Lamb*, 309 Pa.Super. 415, 455 A.2d 678 (1983); *Commonwealth v. Starks*, 304 Pa.Super. 527, 450 A.2d 1363 (1983); *Commonwealth v. Keeler*, 302 Pa.Super. 324, 448 A.2d 1064 (1982); *compare Commonwealth v. Stetler*, 494 Pa. 551, 431 A.2d 992 (1981) (court denied defense access to copy of witness's statement during direct examination of officer who took statement; statement provided during declarant's testimony; no remedy because no prejudice shown).

■ Upon objection, the trial judge should have offered the defense discovery and a continuance in order for counsel to investigate the tickets and reprepare the defense accordingly. Had this procedure been followed, prejudice would have been minimized, and the Commonwealth's error in failing to disclose the tickets pretrial might have been cured. But since the court completely overruled the defense objection, and we cannot discount the likelihood that the introduction of the tickets contributed to the jury's verdict, we should find reversible error. The only remedy that can correct the error at this point is a new trial.

Judgment of sentence reversed; case remanded for a new trial.

CAVANAUGH, J., dissents.