485 A.2d 58

COMMONWEALTH of Pennsylvania,

v.

Joseph HUSSMANN, Appellant.

Superior Court of Pennsylvania.

Argued May 10, 1984.

Filed Nov. 30, 1984.

Gregory B. Emmons, Newtown, for appellant.

Ronald Eisenberg, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

In a prosecution for criminal homicide and arson, what is the duty of the District Attorney to disclose that he has obtained during trial a copy of the defendant's depositions given as part of a civil action to recover for fire losses sustained and covered by a policy of fire insurance? Did the trial court err by allowing the Commonwealth to use such depositions to contradict portions of the trial testimony of the defendant after a brief recess called to permit defense counsel to review his client's prior testimony? These are the principal issues in this appeal from judgment of sentence after John Hussmann had been convicted on two counts of murder of the second degree, arson and conspiracy.[1] We conclude that there was neither prosecuto-

---

1. Appellant's statement of the questions involved in this appeal is entirely too general. He has stated the "questions involved" in the following manner:

A. WAS TRIAL COUNSEL INEFFECTIVE, DENYING YOUR DEFENDANT EFFECTIVE ASSISTANCE OF COUNSEL?
B. WAS THE PROSECUTOR'S CONDUCT THROUGHOUT TRIAL IMPROPER, OVERREACHING AND PREJUDICIAL TO YOUR DEFENDANT?
C. DID THE TRIAL COURT MAKE OR FAIL TO MAKE RULINGS THROUGHOUT THE PROCEDING [SIC] WHICH CONSTITUTED REVERSIBLE ERROR?

rial misconduct nor trial error and affirm the judgment of sentence.

John Hussmann was engaged in remodeling a residential dwelling which he owned on Elizabeth Street in the City of Philadelphia. Because his construction business was saddled with debt, the evidence showed, he determined to burn the dwelling on Elizabeth Street to collect the insurance thereon. He persuaded Burton Smith to set the fire and paid him to do so. Hussmann also provided the gasoline to be used as an accelerant. Smith, in turn, recruited Richard Hahn, an acquaintance, to assist in starting the fire. At or about midnight on August 15, 1979, Smith and Hahn went to Hussmann's building to start a fire. There they found Kevin Higgins, an employee of Hussmann, who occupied a furnished room. As Higgins was preparing to vacate his room, Hahn and Smith poured gasoline over various parts of the building. While they were doing so, the gasoline was prematurely and accidentally ignited. Hahn and Higgins perished in the ensuing blaze. Smith was found a block away, severely burned and writhing in pain. Although he

From our reading of his brief, we have been able to discern that the following *general* issues, in addition to the discoverability of depositions given by the defendant in a civil action, have been argued:

1. Did the prosecuting attorney engage in misconduct during the examination of witnesses?

2. Did the trial court err in allowing the admission of hearsay testimony over objection?

3. Did the trial court err by denying a mistrial after the prosecutor's reference to a suppressed statement?

4. Was it error to deny a motion for mistrial after the prosecutor made allegedly improper remarks during closing argument?

5. Was trial counsel ineffective for not filing a motion to dismiss under Pa.R.Crim.P. 1100?

6. Was counsel ineffective for failing to pursue the issue of pre-arrest delay?

7. Was counsel ineffective for failing to object to hearsay testimony?

8. Was counsel ineffective in his manner of cross-examining the witnesses, Burton Smith and Walter Duds?

9. Was trial counsel ineffective for failing to object or seek further relief with respect to certain allegedly improper and prejudicial remarks made by the prosecutor?

10. Was counsel ineffective for not calling May McKnight as a witness after he discovered that she had erroneously identified another person as the arsonist?

11. Was counsel ineffective by failing to insist that answers be given the jury when the panel asked for factual clarification on matters not clearly established in the record?

We have examined these issues but find them lacking in merit.

initially denied participation in setting the fire, Smith subsequently confessed his role to Hahn's relatives. He also gave a statement to the police and agreed, pursuant to plea bargain, to testify against Hussmann. A warrant was issued for Hussmann's arrest, but Hussmann had fled to Florida. After six weeks, during which Philadelphia police were unable to find him, Hussmann surrendered voluntarily in Florida on June 14, 1980.

At trial, Hussmann was represented by A. Charles Peruto, Esquire. After he had been convicted, Hussmann discharged Peruto and hired other counsel who filed supplementary post-verdict motions challenging the effectiveness of Peruto's assistance. Evidentiary hearings were held thereon. Hussmann then changed counsel again and hired present counsel, who filed additional averments of ineffective assistance which required further hearings. Finally, all challenges to the effectiveness of prior counsel were dismissed, post-verdict motions were denied, and sentences of imprisonment were imposed. This appeal followed.

Jeffrey Voluck, Esquire, had been counsel for Hussmann in a civil action to recover the proceeds of a fire insurance policy which provided coverage for the burned building. During the course of the civil proceedings, Hussmann's depositions had been taken. In those depositions he had described the property destroyed and the values thereof. Hussmann had paid for a copy of the transcribed depositions, but his copy had remained in the file in Voluck's office. Hussmann did not tell Peruto of the existence of the transcribed depositions. Peruto, although aware of the civil action, did not know that Hussmann had been deposed.

Peruto recommended strongly that Hussmann refrain from testifying at his criminal trial. Hussmann, however, insisted on testifying. On the night before Hussmann was to take the stand, the District Attorney obtained a copy of Hussmann's depositions in the civil action from the attorney

for the insurance company. The prosecutor's acquisition of this testimony was not disclosed until after Hussmann's direct testimony had been concluded. When the prosecuting attorney attempted to use Hussmann's civil depositions to show prior inconsistent statements, Peruto objected vehemently. The trial court granted a recess for one and one-half hours to afford Peruto and Hussmann an opportunity to review Hussmann's prior testimony. Thereafter, the District Attorney was allowed to use the depositions to impeach the credibility of several portions of the testimony given by Hussmann at his criminal trial. Hussmann now contends that he would not have testified or would have testified differently if he had known that his prior depositions were in the possession of the District Attorney.

Rule 305(B)(1) of the Pennsylvania Rules of Criminal Procedure provides in pertinent part:

### B.   Disclosure by the Commonwealth

(1) Mandatory: In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

. . . .

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth;

. . . .

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

Hussmann's depositions were neither "confessions" nor "inculpatory statements." They were civil in nature

and, as relevant here, were used only as prior inconsistent statements to attack appellant's credibility. The depositions contained no confessions or admissions of criminal conduct. We are also of the opinion that, in the absence of a specific request therefor, they were not such "documents" as the Commonwealth was required to disclose in response to a general request for discovery under Pa.R.Crim.P. 305 B(1)(f).

The purpose of discovery is to "afford a defendant the opportunity to discover evidence which he did not know existed, as well as to seek possession of evidence of which he was aware." *Commonwealth v. Brocco*, 263 Pa.Super. 51, 65–66, 396 A.2d 1371, 1378 (1979) (interpreting Pa.R. Crim.P. 310, rescinded and replaced by present Pa.R. Crim.P. 305). In the instant case, appellant knew of the existence of his depositions. Not only was it testimony which he, himself, had given, but he had paid to obtain a copy of the transcript of that testimony. Therefore, he was clearly aware of the existence of the transcript. That transcript was as readily available to him, if not more so, than it was to the prosecution. Indeed, it was already in the possession of his agent or attorney. Under these circumstances, the failure of the Commonwealth to disclose its mid-trial acquisition of a copy of appellant's depositions in the civil action did not defeat the purposes of the discovery rule.

In *Commonwealth v. Gelormo*, 327 Pa.Super. 219, 475 A.2d 765 (1984), we recently observed that the mandatory discovery requirement of Rule 305(B)(1) "is not a tool to be used by defense counsel to compel the Commonwealth to obtain evidence to which the defense has equal access." *Id.*, 327 Pa.Superior Ct. at 231, 475 A.2d at 771. Although the facts in *Gelormo* are distinguishable—in that case the prosecution never did acquire possession of information which was in possession of representatives of the Commonwealth in a different county—the principle is nevertheless sound. The rules of discovery do not require the Commonwealth to disclose a transcript of testimony given by the

defendant in the same or other proceedings where it is undisputed that the defendant is aware of and has equal access to that transcript. Our holding is consistent with *Commonwealth v. Romeri*, 314 Pa.Super. 279, 460 A.2d 1139 (1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984). There a panel of this Court held that the Commonwealth had not violated its duty of disclosure by failing to disclose a letter written by the defendant to his mother which had been the subject of a pre-trial proceeding. The Commonwealth could not be faulted because the defense had failed to act upon its awareness thereof. Similarly, in *Commonwealth v. Gibson*, 271 Pa.Super. 499, 414 A.2d 364 (1979), we held that where the defense had been aware that the only eyewitness to a crime had misidentified the defendant at a suppression hearing, the Commonwealth's failure to disclose the witness' identity did not violate any duty of disclosure. Cf. *Commonwealth v. Ryan*, 300 Pa.Super. 156, 446 A.2d 277 (1982) (where defendant should be able to locate witness without the Commonwealth's assistance, the prosecution has no duty to disclose witness' whereabouts). See generally: *United States v. Gleason*, 616 F.2d 2, 24 (2d Cir.1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980); *People v. Heard*, 58 Mich.App. 312, 317, 227 N.W.2d 331, 334 (1975). Compare: *Commonwealth v. Thiel*, 323 Pa.Super. 92, 470 A.2d 145 (1983) (prosecution required to disclose airplane ticket used in rebuttal to contradict defendant's testimony regarding the name under which he flew from Florida to Pennsylvania). We hold, therefore, that Pa.R. Crim.P. 305 B(1)(f) did not require the Commonwealth to produce, in response to a general defense request for documents, a transcript of prior testimony given by the defendant in the same or other legal proceedings.

Pa.R.Crim.P. 305 E gives the trial court broad discretion in formulating remedies for failure to comply with discovery requirements. Prior inconsistent testimony given by a defendant can properly be used by the Commonwealth to impeach the testimony which he gives during

trial. The defendant's only complaint in this case is that he was surprised by the prosecution's possession of a transcript of his earlier testimony. In order to mitigate appellant's alleged surprise, the trial court, in caution, granted a recess to allow appellant and his counsel an opportunity to review the entire transcript before cross-examination was resumed. The trial court's response to appellant's plea of surprise was not error; it does not require that a new trial be granted.

■ Finally, there is no basis on which to find appellant's trial counsel ineffective for failing to obtain pre-trial a copy of appellant's depositions in the civil action.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland v. Washington,* —— U.S. ——, ——, 104 S.Ct. 2052, 2066–2067, 80 L.Ed.2d 674, 695–696 (1984). See also: *Commonwealth v. Litzenberger,* 333 Pa.Super. 471, ——, 482 A.2d 968, 973 (1984). The record in this case reveals, and the trial court found as a fact, that appellant had failed to tell his counsel that he had given earlier deposition

testimony in the civil action. Peruto was led to believe that the civil action had been discontinued. Under these circumstances, we will not hold counsel ineffective for failing to be aware of the existence of his client's prior testimony.

■ Similarly, counsel will not be declared ineffective for failing to move for a mistrial after the trial court had refused to suppress the Commonwealth's use of appellant's depositions for purposes of impeaching his credibility. Counsel was not required to make a useless and redundant motion. The issue had been adequately preserved by objections which counsel made when the Commonwealth's intention became apparent. Counsel was not required to buttress his objection further by a motion for mistrial.

The judgment of sentence is affirmed.