## Commonwealth v. Leach

*Yvonne Ruiz, assistant district attorney*, for the commonwealth.
*Patricia Pierce,* for defendant.

McKEE, *J.,* June 10, 1988—Defendant, Frederick Leach, was arrested on April 18, 1986, and charged with theft by deception,[1] receiving stolen property,[2] and tampering with public records.[3] These charges stemmed from allegations that defendant, who was an employee of the City of Philadelphia, had submitted vouchers to the city's Department of Human Services for work he had never performed. Prior to trial, defense counsel moved for an order for sanctions pursuant to Pa.R.Crim.P. 305 to remedy the commonwealth's purported failure to

---

1. 18 Pa.C.S. §3922.
2. 18 Pa.C.S. §3925.
3. 18 Pa.C.S. §4911.

comply with a prior court order to produce discovery. After a hearing on that motion, this court entered an order precluding the commonwealth from introducing into evidence certain documents because of the commonwealth's failure to comply with prior discovery requests as well as a court order for their production. Following entry of that order, the commonwealth filed a petition to reconsider and this court vacated its order to allow for argument on that motion. Following that argument, this court reimposed its original order and the commonwealth filed a notice of appeal alleging the order was an abuse of discretion.

## PROCEDURAL HISTORY

Following defendant's arrest, a preliminary hearing was held at which the commonwealth produced various supervisors who testified as to the city's procedure for paying employees who had worked overtime for certain city programs.

Through this testimony, the defense became aware that the commonwealth was alleging the existence of certain documents, particularly, personnel sign-in sheets and related documents for the Department of Human Services of the City of Philadelphia. In light of this information, the defense made numerous attempts to locate this evidence. Defense counsel sent letters to the director of adult and aging services division of the Department of Human Services, dated June 3, 1986, and June 16, 1986, as well as a letter dated June 3, 1986, to the personnel assistant of the Riverview Nursing Home, the city agency involved in the commonwealth's allegations.

Subsequently, defense counsel made a written request for discovery in a letter which was dated June 17, 1986, and properly mailed to Assistant District

Attorney Eloise Howard who was the chief of the unit of the district attorney's office that was prosecuting this case. That letter was never responded to or acknowledged by A.D.A. Howard or anyone acting in her behalf.

Thereafter, two additional letters requesting discovery dated July 18, 1986, and July 23, 1986, were sent to Ms. Howard.[4] Defense counsel received no response to any of these letters.

Finally, on August 5, 1986, in a further effort to obtain discovery, defense counsel hired a private investigator, Brian Sweet, to locate documents pertinent to the case. Sweet initially contacted the city solicitor's office and requested permission to review the personnel files, overtime slips and any other relevant information that was available about the defendant and co-employees, Michael Phillips and Eleanor Wasilezak. The city solicitor's office gave Sweet authority to view the files requested and instructed him to contact Michael Phillips, the deputy commissioner for the Department of Human Services in order to do this.

On August 20, 1986, Sweet telephoned Phillips to arrange an appointment to view the files, at which time Sweet was informed that Phillips would not allow him to view the files since there was no written authorization from the city solicitor's office. He further stated. "[I] could guarantee, you will not see my file, nor will you see the overtime slips."

Sweet persisted. He requested interviews with various department employees. However, Phillips

---

4. It was stipulated that these letters were properly mailed to Ms. Howard on the dates in question and given to paralegals in Ms. Howard's office who routinely handle discovery requests.

consented to only an interview with Ms. Eleanor Wasilezak, based upon his determination that only she was involved in the matter. He conditioned the interview upon it taking place in the presence of the acting director of Riverview, and the interview subsequently took place under the stated conditions. Thereafter, Wasilezak admitted to Sweet that she did not feel that she could give a complete statement in her supervisor's presence so she suggested that Sweet conduct a second interview at her home, which he did.

Subsequently, Sweet made additional efforts to contact the other employees for interviews but was told by Phillips that he could not do so on city time. The investigator then attempted to meet with the employees at their homes, but was instructed by an angered Phillips on August 25, 1986, not to bother the employees on city time or at work. Neither Phillips nor anyone or his staff ever granted Sweet access to any official records that pertained to this case.

However, even prior to undertaking these efforts to obtain necessary records, defense counsel had filed a formal omibus pretrial motion in which she had requested an order compelling discovery based upon the failure of the district attorney's office to respond to any of the three written requests for discovery. That motion requested in part:

"(e) Any and all tangible objects, including all documents the commonwealth will seek to introduce at trial, including but not limited to, any and all sign-in sheets for drivers and social workers used by the Operation Out Reach Program from January 1984 through March 1986. . . ."

After this motion was filed, defense counsel forwarded a letter to the Honorable Thomas Shiomos informing him of the commonwealth's

non-compliance with the requests for discovery. Upon receipt of that letter, that court held a hearing following which defendant's motion was granted and the commonwealth was ordered to provide defendant with discovery before February 23, 1987, the next trial date. At that hearing, the following exchange occurred between the court and the prosecutor:

THE COURT: Do you know about the discovery problems? . . . on Frederick Leach. They have not received discovery . . . .

There was a formal motion. It should be in your file. At any rate, whatever it is, see that you get discovery to [defense counsel] before the next date. [February 23, 1986].[5]

The prosecutor then told the court that the commonwealth was ready in the room, and promised the court that the requested discovery would be forwarded, "this afternoon." (This order was not complied with even though some of the records at issue had been in the possession of the assigned detective since April of 1986.)

Prior to the beginning of trial on May 13, defense counsel moved for sanctions on the basis that she still had not received discovery despite Judge Shiomos' order and this court held a hearing to determine what if any sanctions should be imposed for the purported violation of rule 305. Following that hearing, this court entered an order precluding the commonwealth from using sign-in sheets or gate logs at trial and held under advisement defense counsel's request that the commonwealth also be

---

5. Following the time of this oral order, Judge Shiomos was relieved of all judicial authority by order of the Superior Court of Pennsylvania and this matter was listed before this court for disposition.

prohibited from admitting certain canceled checks into evidence.[6]

On February 23 the case was continued due to weather conditions, but both parties represented that they were prepared to proceed to trial.

Following that date on March 9, 1987, the commonwealth filed a petition to extend pursuant to Pa.R.Crim.P. 1100 in which Assistant District Attorney Howard stated once again that the commonwealth had been "ready in room" on September 30, 1986.

Prior to the scheduled trial date, this case was assigned to a different assistant district attorney. In addition, this court was informed that the commonwealth had still not provided defense counsel with discovery. Accordingly, a hearing on the outstanding discovery issues was held on May 12, 1987 and this court thereafter entered its order precluding the admission of certain documents at trial.

## DEFENSE COUNSEL'S MOTION FOR SANCTIONS

Pa.R.Crim.P. 305(B)(1) requires that certain items be disclosed by the commonwealth during the discovery process upon request by defendant. Those items include:

"(a) any evidence favorable to the accused which is material either to guilt or punishment, and which is within the possession or control of the attorney for the commonwealth; . . .

"(f) any tangible objects, including documents, . . . . or other tangible evidence. . . ."

---

6. This court subsequently ruled that these checks could be admitted.

Rule 305 B(2) provides that certain other evidence may be ordered disclosed by the court, in its discretion, upon a showing of materiality of the requested evidence and the reasonableness of the request. This includes:

"(d) any evidence specifically identified by defendant, provided defendant can additionally establish that its disclosure would be in the interest of justice."

In addition, the rule allows a court to take appropriate action to enforce the integrity of the discovery process and orders issued pursuant to it:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection may grant a continuance or may prohibit such party from introducing evidence not disclosed, . . . or it may enter such other order as it deems just under the circumstances." Pa.R.Crim.P. 305 E.

The commonwealth first asserts that it did not violate rule 305 as the requested items were not in its custody or control and that it made the items available as soon as possible. The commonwealth further argues that assuming arguendo, there was a violation, an order precluding use of the requested documents as evidence is not warranted.

## Custody and Control

In support of the first contention, the commonwealth relies heavily upon *Commonwealth v. Gerolmo,* 327 Pa. Super. 219, 475 A.2d 765 (1984); and *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985), and the cases cited therein. In *Gerolmo,* the Superior Court relied upon *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175,

cert. den., 462 U.S. 1120, 103 S.Ct. 3090 (1983), in holding that rule 305 does not require the commonwealth to produce evidence in police custody if the prosecutor does not know that the evidence exists. The court stated:

"The prosecution does not violate discovery rules when it fails to provide the defense with evidence that it does not possess *and of which it is unaware* during pretrial discovery, even if the evidence is in police custody [citation omitted]. Rule 305 B(1) is not a tool to be used by defense counsel to compel the commonwealth to obtain evidence to which the defense has equal access." 327 Pa. Super. at 231, 475 A.2d at 771 (emphasis in original).

In the instant case the assigned detective was in possession of the gate logs as of April 1986. At the preliminary hearing which was held within weeks of the detective obtaining the documents, the commonwealth, represented by Assistant District Attorney Blessington, elicited testimony from its witnesses about records pertaining to this case and admitted three different types of records into evidence as commonwealth exhibits. These records were overtime slips submitted by the defendant, time records based upon overtime slips, and a payroll record. Although the gate logs were not specifically mentioned, they were alluded to by subject matter. The commonwealth cannot now argue it was unaware of this testimony. Although some of these records (C-2 and C-3) were brought to the hearing by commonwealth civilian witnesses, as opposed to police officers, it offends common sense to suggest that the prosecutor was aware of those records and not aware of the gate logs that the assigned detective had taken possession of just weeks prior to the preliminary hearing.

After that hearing this case was apparently assigned to a second and then subsequently a third prosecutor and this undoubtedly accounts for some of the discovery problems in this case. It does not, however, lessen the right of defendant to discovery nor does it explain the commonwealth's failure to respond to the numerous letters sent to Assistant District Attorney Howard, chief of the unit handling this case, requesting discovery. The latter reflects at best indifference to the rights of the accused, and at worst utter contempt for the fair and orderly disposition of the criminal process. Ironically, some of the very authority cited by the commonwealth to support its actions in this case, reaffirms the necessity of prosecutorial fairness and professionalism:

"Society wins not only when the guilty are convicted but when criminal trials are fair . . . . A prosecution that withholds evidence on demand of an accused . . . . helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of due justice, even though, as in the present case, his [or her] action is not the result of guile. . . ." *Commonwealth v. Thiel,* 323 Pa. Super. 92, 100, 470 A.2d 145, 149 (1983).

The commonwealth further contends that defense had equal access to the requested documents and therefore it should not be required to produce this evidence for the defense. *Commonwealth v. Hussmann,* 335 Pa. Super. 603, 485 A.2d 58 (1984). The record establishes that this argument is without merit. The requested records were in the actual possession of the police department and the Department of Human Services, both of which are city agencies. The commonwealth was able to obtain the sign-in sheets and the gate logs upon request, although the defense had previously made

the same request on several different occasions and received no cooperation.

"Clearly, the purpose of the discovery rules is to insure a fair trial for both parties involved. It cannot be ignored, however, that the accused does not have equal access to the same information as does the commonwealth. The prosecution is provided with an abundance of information gleaned . . . from various governmental agencies. Most of the sources of this information are closed to the accused." *Commonwealth v. Stehley*, 350 Pa. Super. 311, 318, 504 A.2d 854, 857 (1986).

More fundamentally, however, all such arguments as to the appropriateness of the discovery request really go to the propriety of Judge Shiomos' order that certain documents be disclosed, and these assertions should have been made at the time of the original hearing on defense counsel's motions for sanctions. No such argument was asserted. Moreover, not only was no such argument made, the commonwealth agreed to disclose the items that very afternoon. Any argument at this late date as to the discoverability of such documents has, therefore, clearly been waived. This court cannot now allow a second bite of the apple by entertaining that argument months after the commonwealth said it would comply with the discovery order of Judge Shiomos. In fact, it is doubtful that this court would have authority to allow for such a relitigation of issues even if it had been inclined to do so.

### Compliance with Judge Shiomos' Order

The commonwealth asserts that it did in fact comply with Judge Shiomos' order to disclose by the next trial date. Since court was closed on that date, the case was continued to May 12, and the documents were brought into court on May 12. This ar-

gument is nothing short of disingenuous. The commonwealth clearly did not know in advance of February 23 that court would be closed because of a snowstorm. Yet, absolutely no effort was made to provide discovery as ordered prior to that date. Moreover, upon learning that court was closed, the commonwealth made no effort to disclose any document pertaining to this case until the day of trial in mid-May, three months later. To compound what can only be categorized as a flagrant disregard for Judge Shiomos' order and contempt for any notion of fair play or proper court procedure, the commonwealth then produced three large boxes filled with over a thousand documents, informed defense counsel that the material was available for inspection and announced its readiness to immediately commence trial using the documents as evidence.

This is not a case where defense counsel has sat idly by in the hope that the commonwealth would gather all the necessary evidence and hand it over before trial thus alowing the defendant to reap the fruits of the prosecutor's labor. Defendant made repeated efforts to obtain relevant documents through both informal and formal discovery as well as independent investigation. When the documents were finally made available in the courtroom the day before the trial, after they had been requested and ordered as long as one year previously, the defense could not reasonably be expected to adequately review the documents and proceed to trial.

## THE REMEDY

In fashioning an appropriate remedy, this court tried to balance the needs of the parties and place realistic expectations upon them. Since the canceled checks at issue were not voluminous, defense counsel could fairly be required to inspect them be-

fore trial and the commonwealth was, threfore, allowed to introduce them. The gate logs were excluded because they were in the custody of the assigned detective at the time of the preliminary hearing and the commonwealth had to have known of their existence. Moreover, any argument as to the propriety of requiring their inspection was waived as it was not made to Judge Shiomos before he entered his order.

The sign-in sheets (of which the commonwealth was clearly aware at the preliminary hearing) were specifically mentioned in defense counsel's omnibus motion and, therefore, were clearly within the scope of Judge Shiomos' order, an order which the commonwealth consented to without objection. Moreover, the sheer volume of the gate logs and sign-in sheets made it impractical to begin the trial and expect counsel to be able to examine these documents.

Obviously, in any case where there has been a failure to disclose, disclosure plus time to review the disclosed materials will cure the evil of "surprise" which is the partial purpose of the discovery process. Rule 305, however, does not require that a court merely remove the element of surprise by forcing a party to accept a continuance, rather, it provides various remedies and gives the court broad discretion to match the remedy to the ill. Were a court's only concern the elimination of surprise, a continuance would be all that the rule would allow.

In its motion to reconsider, the commonwealth cites numerous cases in support of its position that the appropriate remedy for the discovery problem in this case should have been a continuance and that the court abused its discretion by entering the order prohibiting gate logs and sign-in sheets from being

introduced at trial. Those cases fit generally into four groups:

### 1.

The first group of cases relied upon by the commonwealth are cases where an appeal was taken by a defendant from a trial court's granting of a continuance to remedy an alleged violation of rule 305. See *Commonwealth v. Glass,* 495 Pa. 405, 434 A.2d 707 (1981) (continuance proper remedy where commonwealth did not comply with defendant's request for inculpatory statements pursuant to Pa.R.Crim.P. 305(B)(1) until four days prior to trial); *Commonwealth v. Smith,* 490 Pa. 329, 416 A.2d 494 (1980) (defendant suffered no prejudice as a result of prosecutor's failure to disclose witnesses until mid-trial where defendant was given time to prepare);[7] *Commonwealth v. Thiel,* 323 Pa. Super. 92, 470 A.2d 145 (1983) (appropriate remedy is a continuance to enable defense counsel to investigate evidence and prepare the defense where prosecutor sought to admit two airplane tickets during rebuttal which had not previously been provided to defendant despite his pretrial discovery request); *Commonwealth v. Starks,* 304 Pa. Super. 527, 450 A.2d 1363 (1982) (commonwealth's failure to provide tape of complaining witness in violation of discovery order did not prejudice defendant and did not require a new trial where defendant was offered a continuance to further prepare);[8] *Commonwealth v.*

---

7. *Smith* is inapplicable to the instant situation as *Smith* does not involve a court's discretion to enforce the discovery rules. The court therein clearly stated, "It is clear that Pa.R.Crim.P. 305 is not applicable to the instant case . . ." *Smith,* 416 A.2d at 497.

8. *Starks* is of limited assistance to this court's analysis because the alleged violation was disclosed mid-trial, and defense counsel failed to request sanctions.

*Parente,* 294 Pa. Super. 446, 440 A.2d 549 (1982) (continuance rather than striking victim's testimony was the proper remedy where the prosecutor failed to provide defendant with police officer's notes of victim's statement prior to trial and the notes were inadvertently lost on the first day of trial); and *Commonwealth v. Jacobs,* 501 Pa. 139, 460 A.2d 728 (1983) (a continuance to allow for an investigation and a subsequent opportunity to cross-examine was deemed to be the appropriate remedy where the prosecution produced a witness during a bench trial whose identity had been erroneously withheld before trial).

It is important to note that none of these cases involves an appellate court overruling the trial court's exercise of discretion to remedy the breach of rule 305 in the circumstances before it. In fact, each case reaffirms that exercise of discretion. In *Thiel, supra,* the commonwealth had failed to inform defense counsel that it was in possession of airline tickets to Florida purchased by defendant under the names of "Mr. and Mrs. K. Sutton." The commonwealth then introduced these tickets on rebuttal to contradict testimony given by defendant while testifying in his own behalf that he had never gone to Florida under a false name. The trial court overruled a defense objection to this evidence and allowed the tickets to be introduced. The Superior Court ruled that this constituted reversible error as the trial court should have granted a continuance to allow defense counsel to properly investigate and prepare a defense. In so ruling, the Superior Court ordered a new trial. The language of the court in *Thiel* makes clear the fact that its analysis is guided by the fact that the discovery violation came to light during the course of the trial, after the improperly

withheld evidence had already been introduced. Thus, the court reasoned:

"In many cases, ordering a continuance will be an adequate remedy: This will be so where the undisclosed . . . evidence is admissible. and the defendant's only prejudice is surprise. (Citations omitted.) Sometimes, however, the prejudice will go beyond surprise, if the prejudice is so great that the fairness of the trial has been affected, *a new trial should be ordered*." 323 Pa. Super. at 101, 470 A.2d at 150. (emphasis supplied) Thus, the court was clearly addressing a discovery problem which arises during the course of a trial. However, in doing so, the court reaffirmed the broad authority and discretion of the trial court to remedy violations of rule 305.

"[Rule 305 E] gives the trial court broad discretion in formulating remedies for a failure to comply with discovery requirements." *Id*.

Similarly, in *Jacobs, supra,* and *Parente, supra,* the violations of the discovery rules occurred once trial had begun and the trial court, in its discretion, offered a continuance to afford defense counsel an opportunity to investigate and properly cross-examine the one witness whose testimony was in question.

None of these cases suggest that the discretion explicitly conferred by rule 305(E) is limited to the point urged by the commonwealth.

2.

The second group of cases relied upon by the commonwealth are cases where a trial court actually dismissed criminal charges or ordered new trials because of the commonwealth's breach of discovery

rules. See *Commonwealth v. Yost,* 348 Pa. Super.. 297, 502 A.2d 216 (1985); *Commonwealth v. Woodell,* 344 Pa. Super 487, 496 A.2d 1210 (1985); *Commonwealth v. Palmer,* 319 Pa. Super. 56, 465 A.2d 1050 (1983).

In *Palmer,* the Superior Court did infer that exclusion of evidence ought not to be ordered for a violation of rule .305 unless the violation takes on constitutional significance.

"[T]his case does not involve a violation of constitutional dimension. Therefore, the exclusionary rule does not apply. All that is involved here is a violation of the discovery rules. An appropriate sanction for that violation, the grant of a new trial, has been ordered. . . . The purpose of rule 305, to avoid unfair surprise, has been served by granting appellee a new trial." 319 Pa. Super. at 59, 456 A.2d at 1050. Thus, the court does suggest that, absent constitutional implication, a continuance is not *a* remedy, but *the* remedy to be employed by the trial court. However, the later holdings of the Superior Court (see *Yost, supra* and *Woodell, supra*) as well as the literal language of rule 305 casts doubt upon such a strict and unyielding reading of *Palmer.*

In *Yost,* the court declared the purpose of rule 305 to be:

"To afford defendant the opportunity to discover evidence which he did not know existed, as well as to seek possession of evidence of which he was aware." 348 Pa. Super. at 304, 502 A.2d at 220.

Thus, *Yost* upholds an objective of fundamental fairness as part of the discovery rules. While such fairness is included in the concept of avoiding surprise it is clearly separate from and in addition to that objective. *Yost* requires disclosure of pertinent evidence even where the defendant is already aware

of it and, therefore, could not be surprised by it. In *Yost,* the trial court entered an ex parte order prohibiting certain evidence from being introduced at trial and then dismissed the charges because it deemed the remaining evidence insufficient to prosecute. The Superior Court reversed because *"dismissing the charges"*. (emphasis in original) was deemed inappropriate. 348 Pa. Super. at 504, 502 A.2d at 219.[9]

Similary, in *Woodell,* the trial court dismissed charges because of the failure of the commonwealth to provide information which was neither exculpatory, nor subject to mandatory disclosure. The trial court's order was reversed only because "dismissal of the prosecution is not a remedy which has been *specifically recommended."* (emphasis supplied) 344 Pa. Super. at 492, 496 A.2d at 1213. The court, however, again went on to uphold the broad discretion of a trial court by stating that, even though dismissal of the charges is not specifically provided for in rule 305, the broad discretion confered therein may, in an appropriate case, allow for just that remedy.

---

9. In the instant case, the order of this court is not only specifically provided for by rule 305, it is tempered by a weighing of equities in that some of the previously non-disclosed evidence (canceled checks) is nevertheless allowed into evidence. The violation in *Yost* appears to have had constitutional implications pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), but the Superior Court did not base its holding on that fact. See *Yost,* 348 Pa. Super. at 300, 502 A.2d at 218. Moreover, the general discretion of a trial court to remedy a discovery breach is so fundamental that Judge Roberts was moved to state in his dissent in *Yost* that the lack of response by the commonwealth to a suppression order justifies dismissal of the charges. "In all respects, it is an order 'just under the circumstances.' " 348 Pa. Super. at 304, 502 A.2d at 220.

### 3.

"The third category of authority relied upon by the commonwealth consists of those cases where the evidence in question was equally available to both sides and the defense attorney was already familiar with the requested information." See *Commonwealth v. Gelormo, supra,* and *Commonwealth v. Hussman,* 335 Pa. Super. 603, 485 A.2d 58 (1984). That is not the situation before this court.

### 4.

The last category of cases are those cases where a trial court's refusal to impose sanctions was upheld because the prosecutor was unaware of the evidence in question or did not have such evidence. *Commonwealth v. Chew,* 338 Pa. Super. 472, 487 A.2d 1379 (1985); and *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985), cert. den., 106 S.Ct. 2245 (1986).

This point has been discussed above. This is simply not the situation before this court, and even if it were, this court is not free to now ignore a prior discovery order to which the commonwealth did not object until the beginning of trial before this court.

Thus, the gate logs and sign-in sheets may not now be relied upon by the commonwealth.